Argued November 6, decided December 22, 1908, rehearing denied
February 9, 1909.

## HILL *v.* SAUGESTED.

[98 Pac. 524.]

MASTER AND SERVANT—INJURY OF SERVANT—QUESTIONS FOR JURY.

1. The question of contributory negligence in an action by a servant for injuries received because of failure of the master to properly guard a saw is ordinarily one of fact, and it is only when the danger is not only avoidable if the servant acts prudently, but is such as no prudent man will incur under the circumstances, that contributory negligence can be declared as a matter of law.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

2. Plaintiff was engaged by defendant to work in a sawmill with instruction tions to help generally about the mill. On the day he was injured, the man in charge of a saw was pouring water on the boxing of the saw to keep it from heating, and, as plaintiff passed by him, the man put down the water can to rest his arm, and plaintiff took the can, reached over the saw to pour water on the boxing, and while so engaged his left hand came in contact with the saw, and was injured. *Held,* that whether the injury was due to his own negligence was for the jury.

MASTER AND SERVANT—INJURIES—ASSUMPTION OF RISK.

3. Laws 1907, p. 302, c. 158, § 1, requires that any one operating a mill shall maintain reasonable safeguards for all saws which it is practicable to guard, and prohibits the use of such saws if not guarded. Sections 4 and 7 (pages 303, 304) require the Labor Commissioner to inspect all sawmills, and, if the saws therein are guarded, to issue a certificate to that effect which shall be *prima facie* evidence of a compliance with the law, but, if the saws are not guarded, he is required to serve on the persons operating such a mill a written statement of his requirements before he would issue the certificate. Sections 8 and 10 (pages 306, 307) make persons violating the provisions of the act liable to a fine, and, if such violation shall be the proximate cause of an injury to any employee, the persons operating the mill shall ·be liable in damages therefor. *Held,* that a master who fails to comply with the provisions of the act by guarding his machinery and saw after notice by the Labor Commissioner cannot escape liability for injury to a servant on the ground that the servant assumed the risk of such injury.

MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS.

4. The complaint in an action by a servant to recover for injuries by contact with an unguarded saw alleged that the deputy labor commissioner inspected the mill and pronounced the saw to be a dangerous appliance, and then and there gave definite notice in writing to safeguard it. *Held,* that this was a sufficient allegation that it was practicable to safeguard the saw after defendant had answered over.

MASTER AND SERVANT — INJURIES TO SERVANT — SAFEGUARDING MACHINERY.

5. Laws 1907, p. 302, c. 158, requires any one operating a mill to safeguard the saws, and requires the Labor Commissioner to inspect all mills to which the act applies, and, in the case of a failure to comply with the act, to notify the person or persons operating the mill. *Held,* that an omission in a notice by the commissioner to safeguard a saw to state the manner in which the saw was to be safeguarded does not relieve the person operating the mill from complying with the statute, as it is his duty to safeguard the saws in his mill whether notified to do so by the Labor Commissioner or not.

From Baker: WILLIAM SMITH, Judge.

This is an action by Bert Hill against G. E. Saugested to recover damages for personal injuries. From an order granting a nonsuit at the close of plaintiff's testimony, plaintiff appeals.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action to recover damages for a personal injury received by plaintiff by coming in contact with

a side-edger saw in defendant's mill, where he was employed, which saw defendant had failed and neglected to fence or safeguard, as required by the factory inspection act. Laws 1907, p. 302, c. 158. This law provides, in substance, that any person, firm, corporation, or association, operating a factory, mill, or workshop where machinery is used shall provide and maintain reasonable safeguards for all trimmers, cutoff, gang-edger, and other saws which it is practicable to guard, and which can be effectually guarded with due regard to the ordinary use of such machinery, and the danger to the employees therefrom, and with which employees are liable to come in contact while in the performance of their duties, and, if not so guarded, the use thereof is prohibited, and notice to that effect shall be attached thereto by the employer immediately upon receiving notice of such defect or lack of safeguard, and such notice shall not be removed until such defect has been remedied or the machinery safeguarded, as provided by law. Laws 1907, p. 302, c. 158, § 1. It is made the duty of the labor commissioner by himself or deputy, from time to time, to inspect all factories, mills, etc., to which this act applies, and if, in his judgment, the machinery and appliances therein conform to the requirements of the law, to issue to the owner, lessee, or operator a certificate to that effect, which shall be *prima facie* evidence of a compliance with the law so long as it continues in force. If, however, in his judgment such factory, mill, or workshop or the machinery and appliances therein do not conform to the provisions of the law, he is required to forthwith serve on the person, firm, corporation, or association operating or owning such machinery or appliances, or occupying the premises, a written statement of his requirements before he will issue a certificate as provided in the act, and, if such requirements are complied with within 30 days, the certificate shall issue. If the requirements of the commissioner are deemed unreason-

able, an appeal therefrom may be taken to arbitrators, whose decision shall be final. Sections 4, 7, pp. 303, 304. A person, firm, corporation, or association who violates or fails to comply with the provisions of the act is liable to a fine of not less than $25 or more than $100, and, if such violation or omission shall be the proximate cause of an injury to any employee, shall be liable to damages therefor, not to exceed $7500. Sections 8, 10.

The defendant is the owner and operator of a sawmill in Baker County. Among other machinery therein is a circular saw, about 16 inches in diameter, known as a "side-edger saw," and which projects above the top of the table or platform to which it is fastened. This saw was not covered or safeguarded in any way, and on the 30th of April, 1908, the deputy labor commissioner made an inspection of the mill, and pronounced it unsafe and dangerous, and notified defendant to cover the same, explaining to him orally how it could be done at but little expense or labor. Defendant, however, failed or neglected to comply with the provisions of the law or requirements of the labor commissioner, and on the 26th of May plaintiff, who was employed in the mill, came in contact with the saw while it was in operation, and his left arm was so injured that it had to be amputated. On June 17th he gave defendant notice in writing of such accident as required by law, and on October 12th commenced this action to recover damages for the injuries sustained by him. The complaint alleges that defendant is the owner and operator of the sawmill in question; that plaintiff was employed therein in assisting and operating the same, and in manufacturing lumber, and while working with and operating the side-edger saw his left arm came in contact therewith, severly injuring it and necessitating amputation; that it was the duty of defendant to provide good and reasonable safeguards for the machinery in such mill, and especially the side-edger saw; that the mill had been inspected by the deputy

labor commissioner, who pronounced the saw a dangerous and unsafe appliance, and had notified defendant in writing to safeguard the same; that defendant had ample time to comply with such requirement prior to the accident to plaintiff, but failed or neglected to do so, and failed and neglected to attach thereto a notice, as required by law, that it was unsafe and its use prohibited, but suffered the same to remain in an unsafe and dangerous condition; that the failure of defendant to safeguard the saw, as required by law, was the proximate cause of plaintiff's injury, and by reason thereof he has been damaged in the sum of $7,250; and that he had given defendant notice of the time, place, and cause of the injury, as required by the law.

A demurrer to the complaint, because it does not state facts sufficient to constitute a cause of action, was overruled, and defendant answered, admitting he was the owner and operator of the sawmill in question, that plaintiff was employed therein, but denying each and every other allegation of the complaint. For a further and separate defense it is alleged: (1) That plaintiff's duties in the mill did not require him to work at, or nearer than 12 feet of, the side-edger saw, and that his coming in contact therewith and consequent injury were due to his own carelessness and negligence, and not that of defendant; (2) that the saw was in plain view of plaintiff when he entered defendant's service, and so remained during all the time of his employment, and, with full notice and knowledge of its construction, condition, and operation, he voluntarily entered upon the work which he was employed to do and continued therein until the time of his accident without objection or complaint, and thereby waived the duty of defendant to safeguard the saw, and assumed all risk incident thereto.

At the close of plaintiff's testimony, defendant moved for nonsuit, which was granted, and plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. John L. Rand* and *Mr. Vernon W. Tomlinson,* with an oral argument by *Mr. Tomlinson.*

For respondent there was a brief over the names of *Messrs. Hart & Nichols,* with an oral argument by *Mr. Julius N. Hart.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. A brief reference to the testimony is necessary to an understanding of the questions to be determined on this appeal. The only witnesses whose evidence is material were the plaintiff and the witnesses Hartwig and Trumbull. Plaintiff testified that he had worked at the mill four or five days before his accident; that he was employed to run the cut-off saw, but it had not been put in; that in the meantime he was directed to operate the lumber car, help roll logs to the mill, and help generally about the mill by doing anything "he saw to be done"; that the mill was short of help, and the employees were instructed to assist one another; that on the day of the accident he had been assisting in rolling logs to the log deck, and, when he returned to the mill, Hartwig—the man in charge of the side-edger saw—was pouring water on the boxing to keep it from heating; that as he passed him Hartwig put the can, which he was using, down in order to rest his arm, and that he, plaintiff, took it, reached over the saw to pour water on the boxing, and while so engaged his left hand came in contact with the saw and was injured; that the line shaft of the saw was not properly adjusted, and the boxing had been heating for some time, and it was often necessary to pour water on it to cool it; that the only practicable way to do so was in the manner plaintiff was doing at the time of his accident; that the saw was not covered or safeguarded in any way, and there was no notice thereon that it was unsafe or dangerous; that the saw was in plain sight and had been in operation during

the time of plaintiff's employment in the mill; that he knew it was dangerous, and that his hand would be injured if it came it contact with it, but he could not say whether he was thinking of the danger at the time he was injured or not. Hartwig says he was running the side-edger saw, and plaintiff assisted in off-bearing from it; that at the time of the accident he, witness, had been pouring water on the boxing and had set the can on the railing for a moment, when plaintiff picked it up and began pouring water on the boxing; that while so doing he got his left hand in contact with the saw; that witness did not see the hand strike the saw, and did not know the position it was in at the time. Trumbull testified that he was deputy labor commissioner, and factory inspector; that he inspected the mill of defendant on April 30th, and notified him to safeguard the side-edger saw by covering the top of it; that it was practicable to do so, and could be done by a couple of hours' labor. Upon this testimony two principal contentions are made: (1) That the accident to plaintiff was due to his own carelessness and negligence in permitting his hand to come in contact with the saw; and (2) that the danger from the saw was open and visible and known to, and appreciated by, plaintiff, and therefore he assumed the risk of injury therefrom. The question of contributory negligence in cases of this character is ordinarily one of fact for the jury. It is only when the danger is not only avoidable, if the servant acts prudently, but is such as no prudent man will incur under the circumstances, that negligence can be declared as a matter of law.

2. As said by this court in *Viohl* v. *North Pac. Lum. Co.,* 46 Or. 297-301 (80 Pac. 112, 114) : "Mere knowledge of the danger is not conclusive of negligence in failing to avoid it. A servant's knowledge and his voluntary exposure to the danger are probative facts from which the ultimate fact of negligence must be determined, but they are not conclusive. That the servant exposed him-

self to dangers which could have been avoided imports negligence only when they were of such a character that a man of ordinary prudence and caution would have refused to have incurred them in the performance of his duties, and these are ordinarily questions of fact, and not of law." Now, it cannot be said from the testimony in this case as a matter of law that a prudent man would not have incurred the danger incident to the act in which plaintiff was engaged at the time of his accident. He had been directed by his employer to do whatever work was necessary in and about the operation of the mill. He was therefore acting within the scope of his employment, and whether the injury to him was due to his own negligence was a question for the jury and not the court.

3. There is a great difference of judicial opinion as to whether the defense of assumption of risk is open to a master who fails or neglects to safeguard machinery in accordance with the requirements of a statute, such as are involved in this case, in an action against him by a servant who was injured by such unguarded machinery. The States of Alabama, Colorado, Iowa( Massachusetts, Minnesota, Maine, New York, Ohio, Rhode Island, and Wisconsin are classed as holding that a violation of the statute is mere negligence, the same as the failure of a master to provide a safe place for his servant to work, or safe tools or appliances to work with, and that there is no reason why an action for a resulting injury should not be subject to the rule that no one can be held liable for an injury resulting to another from a risk which the other knowingly and willingly assumes as in any other case of negligence. On the other hand, the States of Illinois, Indiana, Louisiana, Michigan, Missouri, Vermont, Washington, and Kansas hold that statutes of the kind alluded to are obviously designed for the protection of employees from injury from unfenced and unguarded machinery, and it would be against public policy and practically nullify the statute, to recognize or enforce

a rule by which the master can be relieved from the consequences of his violating the law on the ground that his servant had assumed the risk or dangers therefrom. The federal cases are equally in conflict. In *Narramore* v. *Cleveland Ry. Co.,* the Court of Appeals of the Seventh Circuit in a very able and learned opinion by Mr. Justice TAFT held that the doctrine of assumption of risk did not apply in an action brought by a servant against a master to recover damages for an injury received from a defect in the ways or appliances which the master had failed or neglected to safeguard, as required by statute. 96 Fed. 298 (37 C. C. A. 499: 48 L. R. A. 68). The Court of Appeals of the Eighth Circuit announces the contrary doctrine in *St. Louis Cordage Co.* v. *Miller,* 126 Fed. 495 (61 C. C. A. 477: 63 L. R. A. 551), and *Denver R. G. R. Co.* v. *Norgate,* 141 Fed. 247 (72 C. C. A. 365). The decisions bearing upon this question are collated in 20 Am. & Eng. Enc. Law (2 ed.), 121; 4 Thompson, Neg., §§ 4702, 4704; Dresser's Employer's Liability, 116, 117, and notes in 4 Am. & English Ann. Cases, 599; 47 L. R. A. 190; 6 L. R. A. (N. S.) 981. And for a full discussion reference may be had to *Knisley* v. *Pratt,* 148 N. Y. 372 (42 N. E. 986: 32 L. R. A. 367; *Hall* v. *West Slade Mill Co.,* 39 Wash. 447 (81 Pac. 915); *Kilpatrick* v. *Grand Trunk Ry. Co.,* 72 Vt. 268 (47 Atl. 827: 32 Am. Rep. 939); *Western Furniture Co.* v. *Bloom,* 76 Kan. 127 (90 Pac. 821: 11 L. R. A. (N. S.), 225), and the three federal cases already cited. The conflict in the decisions is impossible of adjustment for the simple reason that the two lines of cases proceed on fundamentally different propositions, depending upon whether the defense of assumption of risk in an action by a servant against his master is considered referable to the doctrine of an implied contract, or to the maxim, *"Volenti non fit injuria."* The theory that a servant by his contract of employment impliedly assumes the open and obvious

dangers incident to his work of which he has knowledge, including the negligence of a fellow servant, and cannot recover for an injury caused thereby, was first intimated by Lord ABINGER in *Priestley* v. *Fowler,* 3 M. & W. 1, and formally announced by Mr. Chief Justice SHAW, in *Farwell* v. *Boston & Warchester R. Co.,* 4 Metc. (Mass.) 49 (38 Am. Dec. 339). Since the opinion of Chief Justice SHAW this rule has practically dominated the doctrine of liability of a master for an injury received by his servant in the course of his employment. It was repeatedly stated and applied without question as a basis for determining the rights of the parties until the states began to enact laws requiring certain employers of labor to safeguard dangerous machinery used by them, when some of the courts seized on the theory that the assumption of risk by a servant did not rest on contract, but on the broad ground of the maxim referred to, as a reason for holding that it could be asserted by a master who neglected or refused to comply with the statute. The maxim, *"Volenti non fit injuria,"* from the standpoint of mere verbal construction, means, "One who has invited or assented to an act being done towards him cannot, when he suffers from it, complain of it as a wrong" (Mr. Lord HERSCHELL in *Smith* v. *Baker,* 60 L. J. Q. B. 700), and is simple enough when applied to an action between strangers. The difficulties, however, begin when an attempt is made to extract any rule from the adjudged cases by which it can be determined when, and under what circumstances, a servant can be said to invite or assent to the act causing the injury within the meaning of the maxim. *Yarmouth* v. *France,* 19 Q. B. D. 647; 32 Am. L. R. 57.

It is often asserted that a workman is at liberty to remain in or abandon an employment at pleasure, and, if he remains after he acquires knowledge of a particular risk and danger to which he is subject, he must be held to have voluntarily assumed the risk of injury therefrom.

In theory the basis of this rule is true, but in practice it is not under modern industrial conditions. In many instances workmen are compelled by their necessities or conditions of the labor market to remain in the service in which they are employed in order to support themselves and families. To say to such persons that they are at liberty to quit if they do not like the conditions under which they are required to work is, as said by Mr. Justice STAFFORD in *Kilpatrick* v. *Grand Trunk Ry. Co.*, 72, Vt. 268 (47 Atl. 827: 82 Am. St. Rep. 939), "often only a heartless mockery," or, as Mr. La Batt says, "it is unjust to subject a servant to the penal consequences of voluntary action where he is confronted with the alternative of exposing himself to increased perils, of which he has become aware, or of throwing up his position and taking his chances in a labor market, which under the normal conditions of modern life is always overcrowded, and which frequently overflows with suitors to such an extent that the probability of re-employment for a man of merely average capacity and skill is woefully small." 32 Am. Law Rev. 70. So great has been the difficulty in finding a sound basis upon which to make the maxim referred to applicable to the relation of master and servant that some judges have used language importing that it has no application at all to such relation. Lord CHANCELLOR in *Wilson* v. *Merry*, 19 Law Times (N. S.) 30, and Lord ESHER in *Yarmouth* v. *France*, 19 Q. B. D. 647: 32 Am. L. R. 57. It would be useless for us to pursue the subject further. We could not hope to add anything of value to the discussion, since the question has been debated at great length and all the ground covered in the various decisions referred to. In a note to 6 L. R. A. (N. S.) 981, the authorities are classified and analyzed and the annotator states that they are well-nigh equally divided, but that the rule laid down by Judge TAFT in the *Narramore* case (96 Fed. 298: 37 C. C. A. 502: 48 L. R. A. 68), has been followed in the majority of recent decisions.

In this condition of the adjudged cases, we feel at liberty to adopt that view which seems to us most likely to effectuate the purpose and object of the statute, and to hold that a master who fails and neglects to comply with its provisions by safeguarding his machinery cannot escape liability for an injury to a servant from such unguarded machinery on the ground that the servant assumed the risk of such injury. To hold otherwise would be, in effect, little short of a judicial repeal of the statute, and would place upon the servant the consequences of the unlawful act or omission of the master. As said by Mr. Justice TAFT in the *Narramore* case, 96 Fed. 298 (37 C. C. A. 499: 48 L. R. A. 68) : "The only ground for passing such a statute is found in the inequality of terms upon which the company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant 'to contract the master out' of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet, if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that."

4. It is claimed that the complaint does not state a cause of action because there is no allegation therein that it was practicable to cover or safeguard the saw which caused the injury to plaintiff, or that it could have been done with due regard to its ordinary use, etc. If this averment were essential, which we very much doubt, its omission was a mere technical defect which was cured by answering over. The complaint alleges that the deputy labor commissioner inspected the mill and pronounced the saw to be a dangerous and unsafe appliance, and then and there gave the defendant notice

in writing to safeguard it. The labor commissioner is a public officer and proper effect must be given to his official acts, and when, after an examination of the saw, he pronounced it dangerous and unsafe, and directed that it should be safeguarded, the fair inference is that it was practicable to do so, and the averment of the act of the commissioner is a sufficient allegation to that effect after answer.

5. It is also contended that the written notice given by the deputy labor commissioner to defendant was not sufficient in form, because it does not state the manner in which the saw was to be covered or safeguarded, but, if this was a fatal defect in the notice, it does not relieve defendant from complying with the statute. His duty was to safeguard his machinery when it could be done with due regard to its use, whether notified to do so by the labor commissioner or not. The commissioner is required to inspect the mills and factories enumerated in the act, to see that the law is being complied with, and his certificate is made *prima facie* evidence of a compliance therewith, but, if he should fail to do his duty, it would not relieve the person, firm, corporation, or association, operating a factory, mill, or workshop, where machinery is used, from complying with the statute or from answering in damages to an employee who was injured on account of a failure to do so.

It follows from these views that the judgment of the court below must be reversed, and a new trial ordered.

REVERSED.