Decided 10 July, 1905.

## ALDEN v. GRANDE RONDE LUMBER CO.

81 Pac. 385.

EVIDENCE—ADMISSIONS OF AGENTS—PAST TRANSACTIONS.

1. In an action against a corporation for the loss of certain horses hired to it by plaintiff, alleged to have been killed or permanently injured by the negligence of defendant's servants, admissions or declarations made by defendant's agents as to the manner in which the horses were used and injured, not a part of the res gestæ, but mere historical narrative of past occurrences, are inadmissible.

ASSUMED RISK OF EMPLOYMENT—LIABILITY FOR NEGLIGENCE.

2. Where plaintiff let certain horses to defendant corporation for logging purposes, plaintiff assumes all the ordinary risks incident to such employment, and is not entitled to recover therefor, unless the horses were killed or injured through the negligence of defendant or that of its agents and servants.

From Union: ROBERT EAKIN, Judge.

Action by J. F. Alden against the Grande Ronde Lumber Co. From a judgment for plaintiff, defendant appeals. REVERSED.

For appellant there was a brief and an oral argument by *Mr. Charles H Finn.*

For respondent there was a brief over the name of *Crawford & Crawford,* with an oral argument by *Mr. Thomas Harrison Crawford.*

MR. JUSTICE BEAN delivered the opinion of the court.

This is an action to recover damages for the loss of three horses hired by the plaintiff to the defendant to work in its logging camp, and alleged to have been killed or permanently injured by the negligence of its agents and servants. The plaintiff was a witness in his own behalf, and testified that one of the horses

[38—46 Or.]

was killed at Camp No. 2, in charge of one Johnson as foreman, and the other two were injured at Camp No. 1, in charge of Bean; that after the horses were killed or injured he had a conversation with Johnson and Bean about the matter, and was thereupon asked by his counsel the following question: "You may state whether he (Johnson) told you about it" (meaning the killing of the horse), and over the objection and exception of the defendant he answered that he did. He was then asked: "Now you may state what he told you concerning the matter, and how the horses were killed." This question was likewise objected to, but the objection was overruled, and the witness answered: "The horse ran off a bridge and was killed." He was then asked: "Now, in the conversation you had with him on the day you went up and found the horse was killed, and on the day afterwards, or a few days afterwards, state whether or not in either one of these conversations he stated to you what was the cause of the horse being shoved off the bridge." An objection was likewise made and overruled to this question, and the witness answered: "Johnson claimed the load was not balanced right. That was his opinion. He was not there. He was there afterwards." The court, on motion of the defendant, struck out so much of the testimony as referred to Johnson's opinion, and allowed the remainder of it to stand, and witness was permitted, over defendant's objection and exception, to answer similar questions as to the conversation with foreman Bean concerning the injury to the two horses at Camp No. 1, and the way in which such injury occurred. The testimony was followed by evidence tending to show that, if the accident occurred, or the horses were killed or injured in the manner stated by Johnson and Bean, it was due to the negligence of the defendant and its servants.

1. The evidence as to the statements of Johnson and Bean to the plaintiff concerning the accidents to the plaintiff's horses and the manner in which they occurred were not binding on the defendant, or competent as evidence, because they related to past transactions, and were in the nature of mere historical narrative of past occurrences. The admissions or declarations of an agent are sometimes binding on his principal, but it is only when the act of the agent will bind the principal, and the representations

or statements are made at the time and characterize the act, that they become competent evidence for that purpose: *North Pacific Lum. Co.* v. *Willamette Mill Co.* 29 Or. 219 (44 Pac. 286); *Wicktorwitz* v. *Farmers' Ins. Co.* 31 Or. 569 (51 Pac. 75); *Hannan* v. *Greenfield,* 36 Or. 97 (58 Pac. 888). The admissions or declarations of an agent of a corporation stand on precisely the same footing as those of an agent of a private individual. "To bind the principal, they must be within the scope of the authority confided to the agent, and must accompany the act or contract which the agent is authorized to do or make": Angell and Ames, Corporations (1 ed.), § 309. "The rule which admits admissions of an agent in an action against his principal applies only in two cases: (1) Where the scope of the agency is such that the agent is an agent for the purpose of making the particular admission—as, where an attorney, in the course of a trial, makes a solemn admission against the interest of his client. (2) Where the admission is in the form of a declaration made by an agent, while acting within the scope of his agency, and about the business of his principal, concerning such business. In such a case the declaration made dum fervet opus is a part of the res gestae. It tends to characterize the act which the agent is doing for his principal at the time. It is regarded as a verbal act; and it is admitted on the principle that the whole transaction, and not merely a part of it, ought to appear, including what was said as well as what was done. But where the declaration of the agent relates to his past conduct, or to a past transaction in which he has acted for his principal, so that it is in the nature of a mere historical narrative, it is not admissible to bind his principal, unless the scope of the agency was such that the agent had authority to make the admission for his principal": *Bevis* v. *Baltimore & O. R. Co.* 26 Mo. App. 22. The statements of Johnson and Bean as to the manner in which the horses were injured or killed were therefore not binding upon the defendant.

A contention is made that the error based on the admission of such testimony is not properly before this court, because it is said the bill of exceptions "consists of an extension of the reporter's shorthand notes of all the testimony and the proceedings of the court up to the time the respondent rested his case

in chief," and decisions of this court are referred to disapprov-
.ing bills of exceptions so made up, and refusing to examine them
in search of alleged errors in the admission or rejection of testi-
mony. But counsel is mistaken as to the manner in which the
bill of exceptions in this case is made up. It is, in substance,
in conformity with the rules of practice approved by this court,
and has attached to it and made a part thereof a transcript of
the stenographer's notes.of the trial, which was deemed essential
because of the alleged error based on the overruling of defend-
ant's motion for nonsuit.

2. Exceptions were saved by defendant to nearly, if not quite,
all the instructions given by the court to the jury, but we infer
from the brief that the only error relied upon in that connection
is the modification of an instruction requested by the defendant,
as follows:

"If you find that the owner of said horses hired them to the
defendant for the purpose in which said horses were used and
driven when they were driven, and that such horses were used
and driven only in the way and in the time and the manner
contemplated by such hiring, or by a driver agreed upon, and
either the death or the injury resulted from the efforts to accom-
plish only that which the owner contracted for such horses to
perform (and without fault or negligence), then you will find
for the defendant."

This instruction was given as requested, except that the court
added after the word "perform" in next to the last line the
words "and without fault or negligence," and it is insisted that
it was error so to modify the instruction. It is doubtful whether
there was any evidence tending to show that the horses, or either
of them, at the time of the injury, were being driven by a driver
agreed upon between the plaintiff and defendant, or that they
were driven and used only in the way and the manner and at
the time contemplated in the contract of hiring; but, however
that may be, if they were injured by reason of the fault or neg-
ligence of the defendant, it would be responsible, notwithstand-
ing they may have been driven by a driver agreed upon by the
parties, or used in the manner and at the time contemplated in
the contract. When the plaintiff hired these animals to the
defendant for logging purposes, he, of course, assumed all the

ordinary risks that are incident to such employment; and if they were killed or injured without the fault or negligence of the defendant or its agents and servants, the plaintiff cannot recover, but if they were killed or injured through the negligence or want of skill or ordinary caution on the part of the defendant, then it is liable. This, it seems to us, is the legal effect of the instructions as given by the court upon the trial, and they constitute a fair statement of the law of the case.

It follows from these views that the judgment of the court below must be reversed, and it is so ordered.          REVERSED.

Decided 10 July, 1905.