Argued January 30, decided February 17, rehearing denied April 7,
1914.

## PARKER *v.* SMITH LUMBER CO.*

(138 Pac. 1061.)

**Evidence—Documentary Evidence—Photographs.**

1. Photographs, when relevant to describe a person, place or thing,
are admissible to apply the evidence in a cause; but they must be
shown by extrinsic evidence to be true representations of the place or
subject at the time in controversy.

[As to photographs as evidence, see notes in 75 Am. St. Rep.
468; 114 Am. St. Rep. 437; Ann. Cas. 1913D, 1277.]

*On the general question of the use of photographs as evidence, see
note in 35 L. R. A. 802.                      REPORTER.

Evidence—Documentary Evidence—Photographs.

2. Photographs, to be admissible in evidence, need not be verified by the photographer who took them; but foundation for their admission may be laid by the evidence of anyone who can testify as to their correctness.

Evidence—Reception of Evidence—Discretion of Trial Court.

3. Whether a photograph is sufficiently verified to be admitted in evidence is to be determined by the trial court, in the exercise of a sound discretion.

Evidence—Best and Secondary Evidence—Photographs.

4. When a written instrument is admissible as evidence, and cannot be produced, and a proper foundation is laid for the admission of a copy, a photograph, shown to be a true copy by the person who took it or another, is admissible as secondary evidence.

Evidence—Best and Secondary Evidence—Grounds for Admitting Secondary Evidence.

5. Under Section 712, subdivision 2, L. O. L., providing that secondary evidence may be produced when the original cannot be produced in a reasonable time with proper diligence, and its absence is not owing to the default or neglect of the party offering the evidence, where plaintiff wrote to an insurance company on November 21, 1912, asking for the return of a certificate which he desired to use as evidence, and received no answer, and made no further effort to procure the certificate before the trial January 29, 1913, sufficient diligence is not shown to authorize the admission of secondary evidence.

Evidence—Admission by Corporate Agent—Authority.

6. In an action against a corporation for the death of an employee, a certificate by the vice-president of a corporation used in obtaining insurance on the life of the decedent, that his death, or the accident which caused it, was not attributable to the excessive use of intoxicating liquors, is not, in the absence of evidence that it was within the real or apparent scope of his authority, admissible against the company.

> [As to when admissions and declarations to agent are evidence against principal, see note in 53 Am. Dec. 778.]

Trial—Verdict—Special Verdict—Conflict With General Verdict.

7. Under Section 154, L. O. L., providing that the court may instruct the jury, in addition to returning a general verdict, to find upon particular questions of fact, and these special findings shall constitute the special verdict, special verdicts control general verdicts when the two are inconsistent.

Municipal Corporations—Obstruction in Street—Verdict—Effect.

8. In an action for death from running with a motorcycle at night into a woodpile in a street, left there by one of the defendants, special findings that the decedent was intoxicated at the time of the accident, and that his intoxication contributed proximately to his injury, are conclusive against plaintiff, in the absence of error in rulings on evidence or instructions, since they show that decedent was guilty of contributory negligence.

Trial—Instructions—"Intoxication."

9. In an action for wrongfully causing death by leaving an obstruction in a street, instructions that, if the decedent was so intoxicated that he had lost control of his brain or muscles such as an ordinarily prudent man in the full possession of his faculties would exercise, and defendants were ignorant of such condition, and such intoxication contributed proximately to the injury, plaintiff cannot recover, but that a person under the influence of liquor is not necessarily intoxicated, and intoxication is synonymous with drunkenness, evidenced by undue excitation of the passions or feelings or impairment of capacity to think and act correctly, were proper.

.[As to intoxication as contributory negligence, see note in 25 Am. St. Rep. 39.]

From Coos: JOHN S. COKE, Judge.

This is an action by John A Parker, administrator of the estate of George H. Parker, deceased, against the C. A. Smith Lumber & Manufacturing Company, a corporation, and the City of Marshfield, a municipal corporation. From a judgment for the defendants, plaintiff appeals. The facts are set forth in the opinion of the court.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Isham N. Smith, Mr. William T. Stoll* and *Mr. Hugh Barclay,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the names of *Mr. John D. Goss* and *Mr. J. C. Kendall,* with an oral argument by *Mr. Goss.*

Department 2.   MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiff, as administrator of the estate of George H. Parker, deceased, who died intestate on the 19th day of August, 1912, from the effects of an injury received by him on the morning of August 18, 1912, in the City of Marshfield, brought this action to recover $7,500, as damages for the death of the decedent, claiming that his death was caused by the negligence of the defendants.

The defendant the C. A. Smith Lumber & Manufacturing Company is a corporation, and the defendant the City of Marshfield is a municipal corporation of this state.

The defendant the C. A. Smith Lumber & Manufacturing Company was engaged in the manufacture and sale of lumber, and in selling wood for fuel. Said company delivered the wood, by it sold, to its customers in said city, by "dumping" it in wagon-load quantities on the sides of the streets in front of their dwelling-houses.

South Broadway is one of the principal streets of Marshfield, and extends in a southerly direction from Central Avenue to and beyond the place where said decedent was injured as stated *infra.* South Broadway is a public highway of said city, and is 80 feet wide, to a point where Ingersoll Avenue intersects it; but from that point southerly said South Broadway has been opened and improved to the extent of only approximately 23 feet in width, and said improvement consists of planking the driveway and guard railings along the outer edges thereof, the said part of said street being approximately 23 feet wide. Algie Hanson resides on the east side of said portion of said street, at No. 912 thereof. On the afternoon of August 17, 1912, at about 4 o'clock, the defendant company, at the request of said Algie Hanson, and for his use and benefit, as fuel, delivered to him, in front of his residence at No. 912, on the east side of said street, a load of short mill wood. Said load of wood (see evidence of Dr. Minigus) was dumped on the east side of said street. It was about 3 feet high, and about 10 or 12 feet long, north and south, extending to within 4 or 5 feet of the center of the street.

The complaint alleges, *inter alia,* that some time during the night of August 17th, or the morning of the

18th day of August, 1912, the said George H. Parker, deceased while lawfully passing through said street in a southerly direction on a motorcycle, and while a dense fog and darkness were prevailing, ran into or over the said obstructions, or one of them, sustaining as a result thereof a fracture of his skull and other injuries from the effect of which he died some time during the forenoon of August 19, 1912, The complaint alleges, also, that the decedent was 28 years old, a skilled mechanic, and that he was of robust health and intellect, and industrious, thrifty and of good habits. The complaint alleges, also, that the company defendant, after dumping said wood in the street, as stated *supra,* "wantonly, unlawfully, and negligently" allowed the said obstructions to remain in said street until after the morning of the 19th day of August, 1912, without placing any barrier, light or danger signal of any kind on or around the same to warn or protect persons traveling on or passing through said street. The complaint alleges, also, that the said obstructions of said street by the defendant the C. A. Smith Lumber & Manufacturing Company, as aforesaid, was known, and by reasonable care should have been known, by the defendant city; but that the defendant city negligently failed and neglected to cause said obstructions to be removed, or to put or cause to be put any barrier, guard, light or danger signal on, around or about the same to warn or protect persons traveling on or passing through said street. The complaint demands a judgment against the defendants for damages in the sum of $7,500.

The defendants filed separate answers, denying the principal allegations of the complaint, and setting up affirmative matter. The city defendant alleged that it had no notice or knowledge of the placing of said wood in said street. Both defendants admitted that

they placed no lights or guards at or about said wood. The defendant company admitted delivering said wood to Algie Hanson as above stated, but averred that it did so in accordance with an ordinance of said city duly authorizing the delivery of fuel in that manner.

Both defendants, by their answers, pleaded in substance, as a defense, that the plaintiff's intestate, George H. Parker, had knowledge of the fact that said wood was in said street at the time of said injury, and that said decedent, at the time of said accident, was in a state of gross intoxication, and incapable of properly managing, or controlling, or operating the said motorcycle upon which he was then and there riding, or of observing or avoiding obstructions; that said wood was plainly discernible at ample distance therefrom to enable a sober person to avoid collision therewith, and that said George H. Parker failed to observe the same by reason of his intoxication. Said answers allege, also, in substance, that the decedent was, at the time of the accident, traveling along the east side of said street, and was then and there operating said motorcycle at a high, unreasonable, reckless and dangerous rate of speed, greater than 25 miles an hour, and was then and there approaching an intersecting street, and did not at said time have his motorcycle under control, and was then and there operating the same during the period of one hour after sunset to one hour before sunrise without displaying any light thereon, contrary to the provisions of Chapter 174, Laws of Oregon for 1911. Said answers allege, also, that the deceased was traveling at the time of the accident at a greater rate of speed than 15 miles an hour, in violation of an ordinance of said city, etc. The affirmative matters of the answers were put in issue by replies.

A general verdict was returned for the defendants. The jury made, also, certain special findings which

eliminate from consideration many of the questions referred to in the assignments of error.

1. Some time after the accident it is claimed by the plaintiff that the C. A. Smith Lumber & Manufacturing Company, by its vice-president, A. Mereen, signed a certificate to the effect that George H. Parker, who had been in the employment of said company, died on August 19, 1912, "and that his death, or the accident causing it, was not attributable to the excessive use of intoxicating liquors or pre-existing infirmity." This certificate was made to enable the plaintiff to collect a policy of insurance on the life of the decedent. Before it was sent to the company, a photographic copy of it was made. This photographic copy was offered in evidence, and objected to as incompetent and irrelevant, and because the copy had not been properly proved, and because a proper foundation had not been laid for its admission; it being secondary evidence. Photographs stand on the same footing as diagrams, maps, plans, etc., and, when relevant to describe a person, a place, or a thing, photographs are admissible for the purpose of applying the evidence in a cause, and assisting the court or the jury to understand the facts. The photographs must be shown by extrinsic evidence to be true and faithful representations of the place or subject as it existed at the time involved in the controversy.

2. The photographs, however, need not be verified by the oath of the photographer who took them. The foundation for their introduction may be laid by the evidence of anyone who can testify as to their correctness as a representation or likeness.

3. Whether a photograph is sufficiently verified or not is to be determined by the trial court, in the exercise of a sound discretion: 17 Cyc. 414–416; *Mow* v. *People,* 31 Colo. 351 (72 Pac. 1069); *Hall* v. *Connecti-*

*cut Mut. L. Ins. Co.,* 76 Minn. 401 (79 N. W. 497);
*McGar* v. *Bristol,* 71 Conn. 652 (42 Atl. 1000); *Roosevelt Hospital* v. *New York El. R. Co.,* 21 N. Y. Supp.
205, 206; *New York S. & W. R. Co.* v. *Moore,* 105 Fed.
725 (45 C. C. A. 21).

4. When a written instrument is admissible as evidence in a case, and cannot be produced, and a proper foundation is laid for the admission of a copy, a photographic copy of the instrument, shown to be a true copy by the person who took the photograph, or some other person who knows that it is a true copy, is admissible as secondary evidence: Jones, Evidence (2 ed.), § 581; *Duffin* v. *People,* 107 Ill. 113 (47 Am. Rep. 431).

Jones, Evidence (2 ed.), Section 581, says:

"It is a constant practice to receive as evidence pictures and drawings of objects which cannot be brought into court after these have been proved to be accurate representations of the subject.   In like manner, photographs are often admitted when the proper preliminary proof as to their exactness and accuracy is offered. Photographic copies have been received of the public documents on file at the government department at Washington which public policy requires should not be moved.   On the same principle, the courts both of this country and of England have received photographic copies of instruments in the custody of other courts which could not be obtained for use at the trial. * * The cases already cited agree as to the rule that, where a photograph * * is used as evidence, there should be proof of its accuracy given by the photographer or some other person acquainted with the fact. * * Photographs of documents are obviously secondary evidence, and should not be admitted when the original can be produced."

5. From the defendants' abstract, it appears that the trial court refused to admit said photographic copy

of said certificate on the ground that the plaintiff had not shown proper diligence to produce the original.

Section 712, subdivision 2, L. O. L., provides that secondary evidence may be produced ''when the original cannot be produced by the party by whom the evidence is offered, *in a reasonable time, with proper diligence,* and its absence is not owing *to his neglect or default.*''

From the evidence, it appears that the plaintiff had sent the certificate in question to an insurance company in September, 1912. On November 21, 1912, he wrote them, asking for the return of the same. December 4th he received a letter from that company referring to certain claim papers, but no reference is made to the certificate in question; in fact they made a request at that time for a certificate from the employer of the deceased. The trial of this cause was commenced on the 29th day of January, 1913, and the evidence discloses that the only effort made by appellant to procure the original instrument was a letter written November 21, 1912, to the insurance company, requesting its return.

The only inference that can be drawn from the letter of the insurance company (Plaintiff's Exhibit "E," Transcript, p. 46) is that the company would soon be in a position to produce the certificate, and would do so shortly, and the failure of the appellant to again ask for it or otherwise inquire concerning it, during the two months intervening before the trial, was such want of diligence on his part that the court, in the exercise of a sound discretion, could not have been justified in admitting secondary evidence thereof.

We think that the court below did not abuse its discretion in holding said copy inadmissible.

6. But there was a still better reason for not admitting said copy in evidence than that given by the trial

court. The defendant company is a corporation, and acts through its officers and employees. It is elementary law that the acts of the officers or other agents of a corporation bind the company only when they act within the real or apparent scope of their authority.

The defendant company is engaged in the lumber and wood business. The vice-president of this company, by whom the decedent seems to have been employed, some time after the accident signed a certificate, stating that the death of the decedent, or the accident causing it, "was not attributable to the excessive use of intoxicating liquors, or pre-existing infirmity." This certificate was signed and given to the plaintiff to assist him in collecting a policy of insurance on the life of the decedent.

There was no evidence tending to prove that the company authorized its vice-president to make said certificate, or that the making of such certificate was within the actual or apparent scope of his authority. The evidence showed that the person who executed said certificate was the vice-president of the defendant; but that did not tend to prove that the making of such declarations was within the scope of his authority. We cannot presume that it was.

In 1 Clark & Skyles, Agency, page 1027, the rules are stated thus:

"From the above statement, it will be noticed that, to render the declarations or admissions of an agent admissible against his principal, there are these three essentials, which will be dealt with in the following sections: (1) The fact of agency must be established. (2) The admission or declaration must have been made *in regard to a matter which was within the scope of the agent's authority.* (3) The admission or declaration must have been made at such time, and must have been of such a character as to constitute a part of the *res gestae* of a transaction in which the agent was engaged

for the principal. It is also necessary that the admission or declaration *should be one of fact,* as distinguished from a mere expression of opinion, as the latter cannot be admitted against the principal as part of the *res gestae.*"

Mechem, Agency, Section 714, says:

"The statements, representations, and admissions of the agent, made in reference to the act which he is authorized to perform, *and while engaged in its performance,* are binding upon the principal in the same manner and to the same extent as the agent's act or contract under like circumstances, and for the same reason. * * And the statements, representations, or admissions must have been made by the agent *at the time of the transaction,* and either while he was actually engaged in the performance, *or so soon after as to be in reality a part of the transaction.* Or, to use the common expression, they must have been part of the *res gestae.* If, on the other hand, they were made before the performance was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, they are inadmissible. In such a case they amount to no more than a mere narrative of a past transaction, and do not bind the principal."

In *Alden* v. *Grande Ronde L. Co.,* 46 Or. 594, 595 (81 Pac. 385), the facts were that the plaintiff had hired three horses to the defendant, and all of them had been killed, and the plaintiff sued the defendant for the value of the horses, claiming that they were killed through the negligence of the defendant and its agents. The defendant was a corporation. One Johnson was the defendant's foreman, and the plaintiff, some time after the horses were killed, had a conversation with Johnson, and he was permitted, over the objection of the defendant, to state what Johnson told him as to the cause of the death of the horses. This court, commenting on the statements of the agent, Johnson, said:

"The evidence as to the statements of Johnson and Bean [agents] to the plaintiff concerning the accidents to the plaintiff's horses and the manner in which they occurred were not binding on the defendant, or competent as evidence, because they related to past transactions, and were in the nature of mere historical narrative of past occurrences. The admissions or declarations of an agent are sometimes binding on his principal; but it is only when the act of the agent will bind the principal, and the representations or statements are made at the time and characterize the act, that they become competent evidence for that purpose. * * The admissions or declarations of an agent of a corporation stand on precisely the same footing as those of an agent of a private individual. To bind the principal, they must be within the scope of the authority confided to the agent, and must accompany the act or contract which the agent is authorized to do or make. * * The statements of Johnson and Bean as to the manner in which the horses were injured or killed were therefore not binding upon the defendant." See, on this point, Clark & Marshall, Private Corporations, § 727; Storey, Agency (5 ed.), § 134.

The original certificate made by the agent of the defendant company was not made within the scope of his authority, and related to a past accident with which he had nothing to do, and hence it would not have been admissible if it had been in court and offered. A copy thereof, as secondary evidence, was not admissible, and the court below committed no error in excluding it.

The trial court submitted to the jury certain questions for special findings, and, in response to the questions submitted, the jury returned, with the general verdict, special findings as follows:

"We, the jury, impaneled to try the above-entitled cause, find, in addition to the general verdict returned by us, a special verdict as follows, upon the special questions submitted to us by the court as follows:

"Question No. 1. Did the city of Marshfield have notice of the pile of wood constituting the obstruction over which George H. Parker ran, resulting in the accident herein complained of, or were the circumstances such that knowledge thereof should be imputed to the city? We answer: No.

"Question No. 2. Was the woodpile in question at the time of the accident in the possession or under the control of the defendant C. A. Smith Lumber & Manufacturing Company? We answer: No.

"Question No. 3. Was the said George H. Parker at the time of the accident intoxicated? We answer: Yes.

"Question No. 4. Did his intoxication contribute proximately to his injury? We answer: Yes.

"Question No. 5. Did defendant C. A. Smith Lumber & Manufacturing Company, in depositing the wood in the street (South Broadway), use more of the street for that purpose than was reasonably necessary? We answer: No.

"Question No. 6. Was there a reasonable or any necessity for using the street for the purpose mentioned in the last question? We answer: Yes.

"Question No. 7. Did the C. A. Smith Lumber & Manufacturing Company, in delivering the wood in the street, unreasonably obstruct or interfere with the use of the street by the public for travel? We answer: No."

The jury found especially:

(a) That the city defendant did not have notice of the pile of wood constituting the obstruction over which the decedent ran, resulting in the accident complained of, and that the circumstances were not such that knowledge thereof should be imputed to the city.

(b) That the woodpile, against which the decedent ran, was not in the possession or under the control of the C. A. Smith Lumber & Manufacturing Company at the time of the accident.

(c) That the decedent, George H. Parker, was at the time of the accident intoxicated.

(d) That the intoxication of the decedent at the time of his injury contributed proximately to the injury that he received.

(e) That the C. A. Smith Lumber & Manufacturing Company, in depositing the said load of wood in the street, did not use more of the street for that purpose than was reasonably necessary.

(f) That there was a reasonable necessity for using the street as a place to unload and deposit said wood.

(g) That the C. A. Smith Lumber & Manufacturing Company, in delivering said wood in the street, did not unreasonably obstruct said street for public travel.

7. Section 154, L. O. L., provides, *inter alia,* that the court may in all cases instruct the jury, in addition to returning a general verdict, to find upon particular questions of fact to be stated in writing. These special findings under said section constitute a "special verdict." Special verdicts control general verdicts when the two forms of verdict are inconsistent with each other.

8. This special verdict finds that the decedent at the time that he received the injury causing his death was intoxicated, and that said intoxication contributed proximately to said injury. There was considerable evidence given at the trial showing that only a short time before the injury occurred he was drinking intoxicating liquors at various places in large quantities, and tending strongly to prove that he was then intoxicated. At any rate, there was considerable evidence on that point, *pro* and *con,* and the questions whether he was intoxicated at the time of the injury, and, if so, whether his intoxication contributed proximately to the injury, were properly submitted to the jury, and the jury answered both questions affirmatively.

These special findings are conclusive on the points to which they relate, unless the court below erred in either admitting or excluding evidence relating thereto, or in its instructions to the jury relating to the matters covered by said findings. The court below did not so err.

9. The court instructed the jury as follows, in relation to the intoxication of the decedent:

"I instruct you, as a matter of law, that a man cannot voluntarily place himself in a condition whereby he loses such control of his brain or muscles as a man of ordinary prudence and caution, in the full possession of his faculties, would exercise, and, by such loss of control, contribute to an injury to himself, and then hold one ignorant of his condition liable in damages; and, if you believe from the evidence the plaintiff was so intoxicated that he had lost such control of his brain or muscles as an ordinary prudent and cautious man, in the full possession of his faculties, would exercise under similar conditions, and the defendants were ignorant of such condition, and if you further find from the evidence that such intoxication contributed proximately to the alleged injury, then the plaintiff cannot recover. Gentlemen of the jury, as to this question, the court instructs you that a party under the influence of liquor is not necessarily intoxicated. One may well be said to be under the influence of strong drink when he is to any extent affected by it, feels it, and this condition may result from potations so slight as not to impair any mental or physical faculty, and when the passions are not visibly excited, nor his judgment or any physical functions impaired. Intoxication is synonymous with drunkenness, implied or evidenced by undue and abnormal excitations of the passions or feelings or the impairment of his capacity to think and act correctly and efficiently."

We find that the instructions on the subject of intoxication are not erroneous, and that they submitted that question to the jury properly.

The special verdict finds as stated, *supra,* that the decedent was intoxicated at the time of the injury, and that his said condition contributed proximately to the injury.

The decedent, by voluntarily becoming intoxicated, and attempting to travel on a motorcycle when in that condition, was guilty of contributory negligence, and the jury, in addition to finding that he was intoxicated at the time that he was fatally injured, found, also, that his intoxicated condition contributed proximately to said injury. These two facts constitute a complete bar to the plaintiff's cause of action. If the defendants had been guilty of negligence contributing to said accident, the decedent's intoxicated condition, and the further fact that it contributed proximately to the accident, constituted contributory negligence, and bars all right of recovery for the injury: *Scholl* v. *Belcher,* 63 Or. 310 (127 Pac. 968); *Smith* v. *Norfolk & S. R. Co.,* 114 N. C. 728 (19 S. E. 863, 923, 25 L. R. A. 287); *Fisher* v. *West Va. & P. R. Co.,* 39 W. Va. 366 (19 S. E. 578, 23 L. R. A. 758); *Keesham* v. *Elgin, A. & S. T. Co.,* 229 Ill. 533 (82 N. E. 360).

In *Bageard* v. *Con. Traction Co.,* 64 N. J. Law, 322 (45 Atl. 622, 81 Am. St. Rep. 498, 49 L. R. A. 424), the court says:

"The true rule is that voluntary drunkenness does not relieve the drunken man from the degree of care required of a sober man in the same circumstances, and, if his drunkenness renders him incapable of exercising such care, then it contributes to any injury thereby sustained, and bars recovery for another's negligence."

2 Wood, Railroads, page 1457, states the law thus:

"The fact that the person injured was at the time intoxicated does not necessarily constitute contributory negligence on his part, though this fact is to be consid-

ered with others in determining whether or not he exercised ordinary care to protect himself. One cannot voluntarily incapacitate himself from ability to exercise ordinary care for his own self-protection, and then set up such incapacity as an excuse for his failure to use care; *and if the intoxication contributed to the injury, as a proximate cause thereof, it is a complete bar to any action for damages sustained in consequence of it."*

In Volume 1 of Thompson's Commentary, Negligence, Section 341, he states the law thus:

"But it should be carefully kept in mind that voluntary intoxication on the part of a person killed or injured is or is not to be regarded as equivalent to contributory negligence, accordingly as it contributes or does not contribute to bring about the injury, or accordingly as it is or is not to be regarded as the proximate cause of the injury."

If intoxication does not contribute to cause the injury, it is not contributory negligence. If, as in this case, it contributes proximately to cause the injury, it is contributory negligence.

The special findings of the jury establish conclusively that the decedent was guilty of negligence contributing proximately to the injury, and this is a bar to the plaintiff's right of action.

The plaintiff's intestate having been, as found by the jury, guilty of contributory negligence, the plaintiff has no right of action, and, if the court had erred in its instructions or rulings on other points, those errors would have been cured or rendered harmless by the special verdict.

It is not necessary to go into the other questions discussed in the briefs and at the hearing for the reasons stated *supra.* However, we may say in brief that the special findings of the jury are sufficient to show that the defendants were not guilty of negligence.

We find that there was no error in the rulings of the court below.

The judgment of the court below is affirmed.

AFFIRMED: REHEARING DENIED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.

MR. JUSTICE RAMSEY sat in this case by special assignment.