Argued June 25, reversed July 6, 1915.

# MARKS *v.* COLUMBIA COUNTY LUMBER CO.

(149 Pac. 1041.)

**Animals—Injury by Vicious Horse—Evidence—Subsequent Acts Showing Disposition.**

1.  In an action by a servant for injuries alleged to result from the viciousness of a horse given him to drive, evidence of conduct of the horse subsequent to the accident was admissible to show its disposition.

> [As to liability for injuries by and to animals, see notes in 16 Am. St. Rep. 631; 36 Am. St. Rep. 831.]

**Evidence—Opinion Evidence—Acts and Issues.**

2.  In an action by a servant for injuries from the alleged viciousness of a horse given him to drive, opinion evidence that the horse was not a safe one for the work was wrongfully admitted; that being a question for the jury.

**Evidence—Opinion Evidence—Disposition of Animal.**

3.  The habits, characteristics and disposition of the horse are matters of such common knowledge that it would not require expert testimony to determine whether a horse was safe for certain work.

> [Admissibility of evidence of peaceable disposition of animal in action for injuries caused by it, see note in Ann. Cas. 1914B, 1276.]

**Master and Servant—Evidence—Condition Subsequent to Accident.**

4.   Evidence of condition of places and ways a few days after the accident was admissible in connection with a showing that the situation had remained unchanged.

**Evidence—Declarations of Servant—Authority to Bind Master.**

5.   Merely evidence that declarant was a foreman in charge of laborers engaged in handling lumber and piling it in the yard and dock did not show authority on his part to admit liability of his master; and it was error to admit evidence that, several days after the accident, he stated that it was his fault, in that he did not warn the man.

**Master and Servant—Assumption of Risk—Employers' Liability Act.**

6.   The Employers' Liability Act (Laws 1911, p. 16) abrogates the doctrine of assumption of risk in actions coming within its scope.

**Master and Servant—Safe Places and Appliances—Viciousness of Horse.**

7.   Where an animal is used by an employer to carry on work under his direction, he is bound to use reasonable diligence to provide a safe animal, and is bound by what he knew or with reasonable diligence might have known as to the docility of the animal.

**Master and Servant—Personal Injuries—Viciousness of Horse—Question for Jury.**

8.   Evidence that a horse had been in use about the plant for some time, and that the foreman in charge had ample opportunity to observe his conduct when the plaintiff was hurt as well as on former occasions, was sufficient to carry to the jury the question whether the master knew, or with reasonable diligence should have known, the nature of the horse.

From Columbia: JAMES W. CAMPBELL, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action by J. F. Marks against the Columbia County Lumber Company, a corporation.

The substance of the complaint is that the plaintiff was engaged in the employ of the defendant as a common laborer handling lumber about its sawmill in Columbia County; that on January 12, 1914, by direction of the foreman of the lumber-yard, to whose orders the plaintiff was subject, the latter was sent to drive a horse owned by the defendant and used to haul trucks loaded with lumber to be piled on and about a dock upon the Columbia River for shipment.   The

plaintiff alleges that the horse furnished was dangerous, unruly and wholly unsuited for the work; that the trucks had but two wheels, which were in the center thereof, and were also dangerous and difficult to handle; that he was inexperienced in that kind of work; that the passageways through which he was required to haul the trucks were narrow and piled high with lumber on each side, making it difficult to drive through them with the trucks in safety, or without collision or accident. The plaintiff avers that the defendant knew, or might with reasonable diligence have known, about the disposition of the horse, the danger and unsuitableness of the trucks, and the alleys in which they were required to be operated. The particular grievance of which complaint is made is that, while plaintiff was driving through one of the narrow passages with the horse hitched to a truck-load of lumber, the animal became unmanageable and got beyond the control of the plaintiff, so that the load caught the plaintiff with great violence and jammed his shoulder against the adjacent lumber, whereby his collar-bone was dislocated from his shoulder blade, and he was otherwise hurt, to his great damage. The defendant denies the complaint in important particulars, notably with reference to the vicious nature of the horse, the unsuitableness of the trucks, and the inconvenience of the alleys. The defendant also alleges that the plaintiff knew all about the situation and assumed the risks of the work mentioned; that the horse was tractable and well suited for the purpose; and that the injury sustained by the plaintiff was due to his own negligence. The answer was traversed by the reply in all material particulars. A jury trial resulted in a judg-

ment for the plaintiff, from which the defendant appeals.                    REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Crawford & Eakin* and *Mr. George McBride,* with an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief over the names of *Mr. Glen R. Metsker* and *Mr. Edmund B. Tongue,* with an oral argument by *Mr. Tongue.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The first assignment of error is to the effect that the court erred in permitting several witnesses to testify about the acts and conduct of the horse in question after the accident happened.   In treating of this subject, the rule is thus stated in *Kennon* v. *Gilmer,* 131 U. S. 22, 25 (33 L. Ed. 110, 9 Sup. Ct. Rep. 696, 697):

"But evidence of subsequent misbehavior of the horse might properly be admitted, in connection with evidence of his misbehavior at and before the time of the accident, as tending to prove a vicious disposition and fixed habit, and to support the plaintiff's allegation that the horse was not safe and well broken.   The length of time afterward to which such evidence may extend is largely within the discretion of the judge presiding at the trial."

There is ample testimony in the record on the subject of the misbehavior of the horse at the time of the accident.   There is other evidence tending to show that on previous occasions he was hard-mouthed, high-spirited, difficult to control, and that he moved suddenly or stopped suddenly apparently as the whim

suited him. The defendant argues that it is a well-known fact that a horse having run away once will ever afterward do the like if he has the opportunity, although previously he had been well broken and not addicted to that habit. This objection goes merely to the weight of the testimony, for, on the other hand, a horse having vicious habits, like a person, will manifest them repeatedly, and it would be competent to prove this general disposition by the conduct of the horse both before and after the occurrence in question.

2, 3. The next assignment is that the court erred in permitting different witnesses to testify that in their opinion the horse in question was not a safe one for the work. The object of opinion or expert testimony is to enlighten the minds of jurors on questions of fact involving special skill and knowledge as to matters not within the comprehension of ordinary jurors; but it can never be left to an expert to give his opinion on the ultimate question to be determined. In this instance, whether or not the horse was a safe instrumentality with which to perform the labor required of the plaintiff was for the determination of the jury and not for the decision of any expert. Moreover, the habits, characteristics and disposition of the well-known domestic animal, the horse, is a matter of such common knowledge that it would not require the testimony of an expert to determine whether he was safe or not, even if that were a permissible field of expert inquiry.

4. Another assignment of error is to the effect that the court was mistaken in allowing witnesses to testify about the condition of the millyard, docks and passageways a few days after the accident. Abstractly considered, this might be error, but, taken in connection

with the declarations of other witnesses tending to show that the situation in that respect was the same as when the accident happened, we think the testimony complained of was admissible.

5. Another objection to the court's rulings is, in substance, that, over the objection of the defendant, the court permitted hearsay evidence to be given of the statement made by the foreman of the yard concerning the casualty several days after it happened. The testimony in question was that of a witness who spoke of an occurrence which took place about a week after the accident to the plaintiff, and related a conversation with the yard foreman to this effect: The foreman directed the witness to drive the horse, and, as the witness states, said:

"Another thing, I want to warn you. We had a man get hurt here a day or two ago, and you want to watch this horse. Be good to him, as you can. I guess it was my fault. I didn't warn the man."

All the evidence shows about the relation existing between the foreman and the defendant is that the former was in charge of the laborers engaged in handling the lumber and piling it in the yard and dock. There is no testimony whatever in the record indicating that he had any authority to admit the liability of the defendant after the injury to the plaintiff, or to make any statement concerning a past transaction in any way binding the company. The rule against such evidence has been settled in this state by the cases of *Alden* v. *Grande Ronde Lbr. Co.,* 46 Or. 593 (81 Pac. 385); *Wade* v. *Amalgamated Sugar Co.,* 65 Or. 488 (132 Pac. 710); *Parker* v. *Smith Lumber Co.,* 70 Or. 41 (138 Pac. 1061).

A similar error is assigned respecting the statements of physicians whom plaintiff consulted in regard to the nature of his injuries. The record, however, shows that in some instances the testimony about the declarations of the medical men was excluded on the objection of the defendant; and in the remaining instances on that point it went in without opposition. While it may be said that narrations to the jury of what the physicians said were purely hearsay, the bill of exceptions does not present a situation in which we can exclude them.

6. It is also argued that the testimony was clear to the effect that the plaintiff knew, or by the exercise of reasonable diligence should have known, all the hazards and dangers attendant upon the employment in which he was engaged at the time he was hurt, and that consequently he assumed the risk. The complaint, however, in our judgment, states a cause of action, within the scope and meaning of what is known as the Employers' Liability Act, in that it says the "performance of the work or services was dangerous and likely to result in injury to the plaintiff." That statute requires that:

"Generally, all owners, contractors, or subcontractors, and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

We have frequently held that, because this is a criminal statute visiting a penalty upon owners and

others for a violation of its provisions, the doctrine of assumption of risk by the employee is abrogated in actions coming within its scope, for the reason that it will not be presumed that one party to the contract will be bound by the action or nonaction of the other involving a violation of public law by the latter: *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524, 22 L. R. A. (N. S.) 634, note) ; *Love* v. *Chambers Lbr. Co.,* 64 Or. 129 (129 Pac. 492) ; *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351) ; *Dunn* v. *Orchard Land Co.,* 68 Or. 97 (136 Pac. 872) ; *Schaller* v. *Pacific Brick Co.,* 70 Or. 557 (139 Pac. 913) ; *Heiser* v. *Shasta Water Co.,* 71 Or. 566 (143 Pac. 917).

7, 8. It is further argued as a ground for reversing the judgment of the court on the motion for a nonsuit that "the owner of a domestic animal is not liable for injuries inflicted by such animal, unless such owner had knowledge of the vicious disposition or bad character of such animal." As we understand the authorities, the rule is that where an animal is used by an employer as a means for carrying on a work under the directions of the employer, the latter is bound to use reasonable diligence to provide a safe animal, the same as any other instrumentality for performing the labor, and that, as to the docility of the animal, the employer is bound by what he actually knew or with reasonable diligence might have known. The doctrine is exemplified in the case of *Arkansas Smokeless Coal Co.* v. *Pippins,* 92 Ark. 138 (122 S. W. 113, 19 Ann. Cas. 861, and note). In the instant case there was testimony to the effect that the horse had been in use about the plant of the defendant for some time, and that the foreman in charge of the work had ample opportunity to observe his conduct, not only when the plaintiff was

hurt, but on former occasions. This was sufficient to carry the case to the jury on the question of whether the defendant knew, or with reasonable diligence ought to have known, the true nature of the animal in question.

For the errors assigned, where the court allowed the declarations of the foreman concerning past transactions to go to the jury as binding the company, and for permitting so-called experts to give their opinion about whether the horse was safe for the purpose or not, the judgment must be reversed and the cause remanded to the Circuit Court for further proceedings.

REVERSED AND REMANDED.

Mr. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BENSON concur.