Argued September 26, reversed and remanded October 24, rehearing
denied November 28, 1916.

# TOOMEY *v.* CASEY.*

(160 Pac. 583.)

**Evidence—Secondary Evidence—Admissibility.**

1. The contents of a written instrument which the opposite party
did not produce on demand cannot be established by testimony as to
the witnesses' conclusion as to its legal effect, but its language must
be given so that the court may determine its legal effect.

**Evidence—Documentary Evidence—Secondary Evidence.**

2. Section 712, L. O. L., declares that there shall be no evidence of
the contents of a writing other than the writing itself, save when the
original is in possession of the party against whom the evidence is
offered, and he withholds it after demand, etc., while Section 782 de-
clares that the original writing shall be produced and proved unless
it be in the custody of the adverse party and he fails to produce it after
reasonable notice, in which case evidence of the contents is admis-
sible. *Held* that, in an action against his lessees, whom plaintiff
claimed had assigned their lease to a third person, a notice on the
lessees to produce the assignment does not warrant the introduction
of secondary evidence, for it must be presumed that the assignment
would be in the possession of the assignee.

**Landlord and Tenant—Lessees—Assignees.**

3. Under Section 705, L. O. L., declaring that the rights of a party
cannot be prejudiced by the declaration, act or omission of another
except by virtue of a particular relation between them, lessees cannot
be held to have exercised an option to extend a lease by reason of
the acts of their alleged assignee, where the assignment was not
established.

**Landlord and Tenant—Subletting—Effect.**

4. Where lessees sublet premises under an instrument giving the
sublessee the right to hold over for an extended period, in case the
lessees should exercise their option to extend the lease, the sublessee
cannot exercise the option and bind the lessees for the period of the
extension.

[As to subletting of leased premises, see note in 117 Am. St.
Rep. 91.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.    Statement by MR. JUSTICE BURNETT.

·    This is an action by J. M. Toomey against J. D.
Casey and J. H. Hutchinson, and comes here on a sec-

*For authorities passing on the question of effect of calling for and
inspecting document to make it competent evidence, see note in 33
L. R. A. (N. S.) 552.                                        REPORTER.

ond appeal, a judgment of the Circuit Court having been reversed by an opinion written by Mr. Justice BEAN and reported in 72 Or. 290 (142 Pac. 621). It is admitted that at the dates of the transactions involved herein the plaintiff was the owner of an undivided half and the two defendants owned the other undivided half of a 25-year leasehold interest in some real property in Portland, upon which was situated a three-story and basement building known as the Barr Hotel. It is agreed that on May 26, 1911, the plaintiff leased to his cotenants his interest in the premises, "to have and to hold the same to the parties of the second part for the term of six months from the first day of June, 1911, with the option and privilege upon the parties of the second part for forty-two months beginning with the expiration of the said six months' period," at the monthly rental of $600 during said 6 months and at the same rate during the period of 42 months, "provided the said parties of the second part shall elect to exercise such option and privilege hereby granted and keep, occupy and possess the same during the said forty-two months."

The complaint alleges:

"That in pursuance of said lease the defendants entered into possession of said premises and ever since have been and still are in possession thereof; that at the termination of the period of 6 months mentioned in said lease the defendants exercised the option and privilege given to them therein and renewed said lease for the remaining period of 42 months therein specified."

The plaintiff states what he claims has been paid by the defendants on account of the rent and, after deducting what he avers has accrued for the use of

the premises under the contract, demands judgment for $10,031.42, with interest and costs.

The answer traverses the entire complaint except as otherwise stated. After setting out the tenancy in common existing between the plaintiff and themselves, the defendants claim to have overpaid him for the 6-month term named in the lease, and aver that prior to the expiration of that period they informed him that they would not exercise the privilege, or option, given to them in the lease to continue the same for the 42 months mentioned therein, or for any time after December 1, 1911. They also say they have never since that day occupied the premises under the terms or provisions of the lease between the parties, but that since the expiration of the 6-month term they have been in possession as tenants in common with the plaintiff, and at his request have managed the property to the best interests of all parties. They state an account of the income and expenses in that behalf. They declare, also, that on May 18, 1912, all the plaintiff's interest was sold under an execution against him, and deduce therefrom the conclusion that he is not entitled to any income from the premises since that date.

The tenancy in common and the execution of the lease are admitted by the reply, but otherwise the allegations of the answer are materially traversed. The Circuit Court, hearing the case without a jury, found, among other things, that on or about November 1, 1911, and before the expiration of the 6-month period, the defendants each informed the plaintiff that they would not exercise the option given in the lease to renew the same, and would not hold his half interest under the terms of the demise after the end of the six months. There was also a finding to the

effect that at this juncture the parties entered into negotiations for a new agreement covering the 42 months mentioned, whereby the defendants should make certain improvements in the property, advancing the money therefor, plaintiff's part of which was to be deducted from the rentals coming to him, and that a new lease at $500 per month for plaintiff's half interest should be executed, all on condition that the defendants furnish him satisfactory security for the payment of arrears of rent and what should accrue under the proposed arrangement, but that the condition as to the security was never met by the defendants, and the new lease was never executed. The court then made the following finding:

"That the defendants, upon the expiration of the said 6-month period mentioned in said lease, elected to exercise, and did exercise, the option and privilege contained in said lease, to extend the said lease for a further period of 42 months, and did keep and occupy, and possess the said premises after the expiration of said 6-month period, and ever since, and during all the times involved in this action, have occupied and possessed the plaintiff's interest, in said premises described in said lease, under and by virtue of the same, and the extension thereof aforesaid."

From a judgment for the plaintiff, the defendants appeal.

REVERSED AND REMANDED.     REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. Leroy Lomax.*

For respondent there was a brief and an oral argument by *Mr. Bardi G. Skulason.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. On the former appeal the plaintiff based his contention upon the acts and declarations of Leroy Lomax to bind the defendants; but in default of proof that they had authorized him to act as their agent in the matter relied upon by the plaintiff, the decision of the Circuit Court was reversed in a well-written opinion by Mr. Justice BEAN. The record at present before us reveals that at the second trial the plaintiff abandoned the theory of agency, and now counts upon showing that the defendants assigned to Lomax their interest in the lease, that he, as such assignee, held over after the expiration of the term, and that this amounts to an election on their behalf to continue the lease for the additional period of 42 months. The whole controversy turns upon whether there is any evidence to support finding No. 10 quoted above. As before, the plaintiff insists upon holding the defendants by virtue of the conduct of Lomax, and, in lieu of showing that the latter was the agent of the defendants, shifts his ground and undertakes to prove an assignment by them of their lease, so as to make the actions of the assignee after the expiration of the term obligatory upon the tenants of the plaintiff. It seems that plaintiff served a notice on the defendants to produce the alleged assignment from them to Lomax of their interest under the lease, claiming that there was an instrument in writing of that purport. At the hearing, when the defendants were called upon to comply with the notice, they answered substantially that they had no such document, and that no such instrument had ever existed. They did, however, produce and put in evidence a lease of the premises dated May 27, 1911, from themselves to

Lomax and one Taylor, having appended thereto a writing signed by the latter June 30, 1911, selling, assigning and transferring all his interest therein to Lomax. The plaintiff then called witnesses, himself included, for the purpose not only of proving the existence of the alleged writing, but also the contents thereof. The utmost that any of them could say was that there was an assignment indorsed upon or attached to one of the copies of the lease, upon which plaintiff counts, transferring the interest of the defendants to Lomax. No one pretends to give the date or the language of the instrument. The most that can be said of the testimony on this point is that the witnesses gave their conclusion as to the legal effect of the document. What is required in instances of this sort is that the contents or language of the instrument shall be established leaving to the court the duty, as in all such cases, of declaring what effect in law may be attributed to the document in question.

2. Moreover, there was no showing that the assignment mentioned in the notice to be produced had ever been in the custody or control of the defendants after its execution, if indeed, it was executed. Naturally, it would be in possession of the assignee, who would be subject to a subpoena *duces tecum* for the purpose of getting it in evidence. Our Code has laid down these rules on that subject:

"There shall be no evidence of the contents of a writing, other than the writing itself, except in the following cases: (1) When the original is in the possession of the party against whom the evidence is offered, and he withholds it under the circumstances mentioned in Section 782; (2) when the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence,

and its absence is not owing to his neglect or default'':
Section 712, L. O. L.

Section 782, L. O. L., referred to in the section just quoted, reads thus:

''The original writing shall be produced and proved except as provided in Section 712. If the writing be in the custody of the adverse party, he must first have reasonable notice to produce it. If he then fail to do so, the contents of the writing may be proved as in case of its loss; but the notice to produce it is not necessary where the writing itself is a notice, or where it has been wrongfully obtained or withheld by the adverse party.''

A litigant cannot evade these provisions of the statute by a mere notice to produce, unless there is something to be produced, which is in the custody of the adverse party. The Oregon precedents on this subject are collated by Mr. Justice McNARY in *Jones* v. *Teller,* 65 Or. 328, 333 (133 Pac. 354). Mr. Justice RAMSEY wrote to the same effect in *Parker* v. *Smith Lumber Co.,* 70 Or. 41 (138 Pac. 1061). There was no valid reason for showing the contents of the instrument by parol, even if the oral testimony had disclosed them. For these reasons, the alleged assignment and its after effect upon the defendants must be laid out of the case.

3. This leads to the conclusion that there was an utter failure of proof that the defendants put Lomax into their place by conveying to him their interest in the lease. His actions, therefore, are devoid of the sanction of an assignment whereby they would affect the defendants and impute to them an election to extend the term of the lease. It is said in Section 705, L. O. L., that:

"The rights of a party cannot be prejudiced by the declaration, act, or omission of another, except by virtue of a particular relation between them."

The plaintiff has endeavored to establish this particular relation between the defendants and Lomax by charging that there was a writing, conveying to the latter the interest of the defendants in the lease they held from the plaintiff. In default of the production of the document he essayed to give evidence of its contents, but only went so far as to disclose the version given by the witnesses of its legal effect. The quest was not for the opinion of the witnesses concerning the construction to be given to the paper. They were called upon for its language. Characterizing it as an "assignment" falls short of proof of the contents of the instrument, and is not sufficient to establish it. Under these circumstances finding No. 10 is rather a conclusion of law than a finding of fact. With the plaintiff's failure to establish the contents of the transfer from the defendants to Lomax, if any there was, falls his effort to charge the defendants with his acts and conduct. In the absence of further showing, his doings amount to no more than those of an interloper or trespasser.

4. Besides the original lease from the plaintiff to the defendants there is in evidence a lease from the latter as parties of the first part, to Lomax and Taylor, as parties of the second part, for the premises in question, the *habendum* clause of which reads thus:

"To have and to hold the same unto the parties of the second part for the term of six months from the first day of June, 1911, with the option and privilege upon the parties of the second part for forty-two months beginning with the expiration of the said six months' period, provided always that the said parties of the first part [defendants here] elect to keep and

hold said building for the said forty-two month period under their lease for a half interest from one J. M. Toomey."

Without dispute the evidence shows that Taylor assigned his interest to his cotenant, Lomax. This admitted lease describes the relationship existing between the defendants and Lomax. It clearly shows that his right to continue in the premises depended entirely upon their election to renew the lease. The court expressly found that they had declined to do this. Their refusal to continue the lease after the expiration of the 6 months of itself cut off all authority or right of Lomax to bind them by remaining in possession himself if he did so. His tenancy could not rise higher than its source, nor be continued in contradiction of the terms of the instrument under which he held. In considering the undisputed documentary evidence before him the learned Circuit Judge drew from the actions of Lomax an erroneous conclusion embodied in finding No. 10, which, as already stated, is really one of law rather than of fact. The conduct of the defendants was referable to their character as tenants in common as stated by Mr. Justice BEAN in the former opinion, which is the law of the case. The burden was upon the plaintiff to establish a different relationship. This he did not succeed in doing, and there is no evidence legally to support the finding of fact No. 10, already mentioned. The judgment is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.