CRANE, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*May 22 — June 19, 1896.*

*Railroads: Injury to fireman under engine: Custom: Negligence of engineer: Contributory negligence.*

> While plaintiff, an experienced locomotive fireman, was under his engine engaged in cleaning out the ash pan, the engineer blew off the engine and scalded him. It was shown beyond dispute that a well-established usage required the fireman, when going under the engine for any purpose, to notify the engineer; that before the accident plaintiff had so notified the engineer and had gone under the engine to clean out the ash pan, but after a short time had been called out by the engineer, who wished to move the engine, and had then been sent by the conductor to tack a card upon a car; that, on returning, plaintiff again went under the engine without notifying the engineer and without seeing him or looking for him; and that the engineer did not know that the plaintiff had gone under the engine the second time. *Held,* that there was no ground for imputing any negligence to the engineer, and, if there were, that plaintiff himself, in failing to notify the engineer, was guilty of negligence precluding a recovery, even though the engine had been blown off, or partly so, at the last station, and he did not anticipate that it would be blown off again so soon.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

This was an action to recover damages for personal injuries sustained by the plaintiff in consequence of the alleged negligence of the defendant, while in its employ as a locomotive fireman on one of its freight trains. The negligence charged was that while he was engaged under the engine, in cleaning out the ash pan, at Middle Inlet station, Hart, the engineer, without warning or caution, carelessly and negligently discharged, from the blow-off cock of the engine, hot water and steam upon the plaintiff, whereby he was badly scalded and burned, destroying the sight of his right eye, and inflicting upon him other serious injuries, etc.

At the trial before a jury, there was no substantial dispute as to the facts. It appeared upon the part of the plaintiff that, upon the day of the injury, the train upon which the plaintiff was employed with Hart, the engineer, was on its way south, and, when it reached Wausaukee, the engine was blown off; and, there not being time to clean the ash pan at that place, they determined to make the run to Middle Inlet before cleaning it. It was the duty of the fireman to clean the ash pan, and in order to perform it he had to go in under the back end of the engine and at the back of the ash pan, and scrape the ashes out on the track with a hoe, taking, when the pan is full, eight or ten minutes' time, and in doing the work the fireman kneels down under the engine, with his face towards the ash pan and the mouth of the blow-off cock, with his face quite close to the latter. It is the duty of the engineer to purge the boiler by blowing off the water with the blow-off cock, and it is his duty to determine when this is necessary. To blow off the boiler, he turns a handle on the left side of the engine, which, with the blow-off cock, are near the running board. When the train arrived at Middle Inlet, the plaintiff told the engineer that he was going under the engine; and, after he had been under there a short time, the engineer told him he wanted to move the engine back a little, and the plaintiff came out,

without having finished his work. After the engine had been moved back, and the train and engine came to a standstill, the conductor of the train gave the plaintiff a card and directed him to tack it up on the right side of the car next back of the engine; and the plaintiff, after doing this, returned and got under the engine again on the same side, which was the usual side for going under it. And the plaintiff testified that, in his experience of three years, he had known an engine to be blown off twice on a trip, but not twice in succession, as in this instance; that the frequency of blowing it off depended upon the kind of water used, and that he had no warning or notice, and no reason to suppose, that the engine was to be blown off at that time; that the engineer was on his seat when the plaintiff left the engine, and was not on the ground when he went under the engine the second time, but was on the ground on the left-hand side when he told the plaintiff he wanted to move the engine back; that he did not know where the engineer was when he came back after putting up the card; *that he did not see him, and did not look into the cab, and did not say anything to him;* that when he first went under he told the engineer he was going down there to rake out the pan; that when he or the engineer went under the engine for any purpose, as a rule, each generally notified the other; that it was customary to do so, as a matter of safety; that he always told the engineer when he was going under, and that the engineer always told him when he went under, and such had been the custom for the three years he had worked on the road; that there were no written or printed rules requiring this precaution; that he was not in the habit of looking up the engineer to tell him, when he was not present, but would go under, relying on the engineer to look out before he made a discharge of water.

The plaintiff having rested, the defendant moved for a nonsuit, on the ground that the plaintiff was guilty of such

negligence as to preclude a recovery; but the motion was denied.

On the part of the defendant, Hart, the engineer, testified that he blew off the engine at Wausaukee in part only, and that on arriving at Middle Inlet the plaintiff got down on the right-hand side, and told him the ash pan needed cleaning, and went under the engine on that side; that he (witness) got down on the left side, and was walking around, feeling of the engine to see how warm it was, and he described the moving back of the engine and train after warning the plaintiff, and also in respect to the plaintiff's starting from the cab to nail up the card, after the engine and train had stopped again; that he (witness) got down on the left side of the engine to open the blow-off cock with a wrench, to let the water off, as the cock did not move readily; that there was a little delay in adjusting the wrench and opening the cock, and, when opened, the plaintiff hallooed; that he shut it off, and ran to the gangway, and the plaintiff was on the opposite side of the engine, with his hands to his face; that the plaintiff was not around there when he went down to open the blow-off cock, and he had not said anything to witness as to whether he had finished cleaning the ash pan or not, and before going under the second time the plaintiff had not told him that he was going under there, and he had no reason to believe that he was there at all; that he did not hear him or any one under the engine at work; that when plaintiff went back to the freight car he went down the right-hand side, and thence to the rear, so that, he (witness) being on the left-hand side, it was impossible for him to see the plaintiff when he returned and attempted to go under the engine the second time; that occasionally they blow off the boiler or purge it two or three times a trip, when working hard; that often, at a station, they would fill the engine twice, and then blow it off before leaving there,— that is to say, blow out part of the water, and fill it up, and

blow it out in part again; that they had already blown out
a little water at Wausaukee before coming to Middle Inlet;
that he did not tell the plaintiff at Middle Inlet that he was
going to open the blow-off cock or blow off the engine; that
he would not blow it off if the fireman was under the engine;
that if he did not see him go under there he would blow it
off without knowing anything about where he was, but if he
was on the ground beside the place where he went under
he could see him, and if he told him he was going under
there he would know he was there.  He testified that the
plaintiff had worked with him as fireman thirty-three days;
that he never went under the engine without notifying the
fireman, and that he never knew the plaintiff to go under
there prior to this time without notifying him; that it was
the custom of each to notify the other when either went
under the engine, but if witness was standing right there
and saw the fireman go under he did not think the fireman
would say anything.  The custom to give notice when either
the fireman or engineer goes under the engine was shown,
substantially as stated, by other experienced operatives.

At the close of the testimony the defendant moved the
court to direct a verdict for the defendant; but this was de-
nied, and the case was submitted to the jury to find a spe-
cial verdict in answer to three questions, which was, in sub-
stance: (1) That the engineer, Hart, was guilty of negligence
which caused the plaintiff's injury; (2) that the plaintiff
could not have avoided the injury by the exercise of com-
mon and ordinary care or prudence; and (3) that the amount
of the plaintiff's damages was $5,000.  The plaintiff had
judgment upon the verdict, from which the defendant ap-
pealed.

For the appellant there was a brief by *Greene, Vroman &
Fairchild,* and oral argument by *C. E. Vroman.*  They ar-
gued, among other things, that a servant cannot recover
when his injuries are the result of his failure to follow a rule

established for his safety, especially where the rule is reasonable and habitually observed. *Abend v. T. H. & I. R. Co.* 111 Ill. 202, 208; *Pennsylvania Co. v. Whitcomb,* 31 Am. & Eng. R. Cas. 149; *Wolsey v. L. S. & M. S. R. Co.* 33 Ohio St. 227, 235; *Conners v. B., C. R. & N. R. Co.* 74 Iowa, 383, 387; *Central R. & B. Co. v. Kitchens,* 83 Ga. 83; *Francis v. K. C., St. J. & C. B. R. Co.* 53 Am. & Eng. R. Cas. 410; *Lockwood v. C. & N. W. R. Co.* 55 Wis. 50, 66; *Baltzer v. C., M. & N. R. Co.* 83 id. 459, 472. And it is immaterial that the rule is not a written one promulgated by the master. When servants have for their own personal safety adopted a certain method, custom, or rule in doing their work, which they habitually and invariably follow, it acquires the same force as a rule as if promulgated by the master. It becomes the common law of the company, and if a servant knowing the rule is injured through his violation of it he cannot recover. *Stevens v. S. F. & N. P. R. Co.* 100 Cal. 554, 568, 569; *Luebke v. C., M. & St. P. R. Co.* 63 Wis. 91; *Spencer v. O. & M. R. Co.* 130 Ind. 181; *Mason v. R. & D. R. Co.* 114 N. C. 718; *Wolsey v. L. S. & M. S. R. Co.* 33 Ohio St. 227, 235.

For the respondent there was a brief by *Wigman & Martin,* and oral argument by *P. H. Martin.*

PINNEY, J. 1. The leading facts upon which the decision in this case must turn are substantially undisputed, although as to minor and subordinate facts there are some discrepancies in the evidence. It is shown beyond dispute that there was, and had been for a long time, a uniform and well-settled usage and course of conduct on the road of the defendant company in respect to the relative duties of the engineer and fireman when either went under the engine for any purpose connected with his duty, and that by such usage and course of conduct, founded upon considerations essential to their personal safety in the performance of their

respective duties, each was to notify the other of the fact when he was going under the engine. The plaintiff and the engineer, Hart, as well as other like employees of the defendant company, fully understood what this established usage and course of conduct required, and each regulated, and had a right to regulate, his conduct accordingly. It became "a sort of common law of the company, obligatory upon its employees, and as thoroughly understood by them as though it had been embodied in the printed regulations and read to them by the officers of the company." *Luebke v. C., M. & St. P. R. Co.* 63 Wis. 92.

The evidence is undisputed that the engineer had never known the plaintiff, during the thirty-three days they had served together, to go under the engine before without notifying him; and while the plaintiff testified, in substance, that if the engineer was not present he would go under — be willing to go under, as we understand him — without looking up the engineer, relying upon the engineer to look out before he made a discharge of water, he did not testify that he had ever gone under the engine under such circumstances; on the contrary, he testified that he always did tell the engineer, and the engineer always told him when he (the engineer) was going under. The danger of a contrary course is obvious, as well as the fact that a discharge of water and steam is not the only danger to be encountered, but that great injury or loss of life may be occasioned in such a case by manipulating the engine or moving the locomotive.

The engineer had no knowledge or notice that the plaintiff had gone, or was about to go, under the engine the second time. He was on the left-hand side of the engine, engaged in his proper duties, and could not and did not see or hear the plaintiff when he returned, on the right-hand side, from putting up the card on the car, and went under the engine on that side without giving the engineer any no-

Crane vs. The Chicago, Milwaukee & St. Paul R. Co.

tice of his intention to do so. The engineer had a right to assume that the plaintiff, as his duty and personal safety required, would give him notice of such intention, and to regulate his own conduct accordingly. He was not bound to stop and consider whether it was probable that the plaintiff would fail to perform a duty so important to his personal safety or not; nor was it the duty of the engineer to search for the plaintiff, or give him any notice of his intention to open the blow-off cock. The plaintiff testified that when he came back from putting up the card he "did not see the engineer, did not look into the cab, and did not say anything to him." The plaintiff had no right to assume that the engineer saw him or understood that he was then going under the engine. It does not appear that he made any attempt to notify the engineer, who was within eight or ten feet of his engine all the time, though on the opposite side. Under these circumstances, and for these reasons, it cannot be maintained that the engineer was guilty of any negligence, or that there was any evidence upon which it ought to have been left to the jury to find a verdict upon that point.

It is said the engineer knew, or had reason to believe, that the plaintiff had not fully cleaned the ash pan and would probably return to and complete the work. But he was not required to consider or speculate upon that subject. Neither the fireman nor the engineer was under any duty to anticipate or speculate, in the absence of notice, as to what the other intended to or might or might not do. The engineer was entitled to rely upon the plaintiff's giving notice of the fact if he intended again to go under the engine, and might properly continue in his line of duty, as he did, until he received it, without being subject to the imputation of negligence. In the exercise of the rights and duties of the engineer and fireman, there must necessarily be conformity to the settled usage and uniform course of duty designed to secure their personal safety, or loss of life or serious personal

injury will ensue; and in view of the conceded facts, and in accordance with sound principle and adjudicated cases, there was, we think, no ground for imputing any negligence to the engineer. *Spencer v. O. & M. R. Co.* 130 Ind. 181; *Wolsey v. L. S. & M. S. R. Co.* 33 Ohio St. 227, 235; *Stevens v. S. F. & N. P. R. Co.* 100 Cal. 569; *Mason v. R. & D. R. Co.* 114 N. C. 718.

2. But, if it be conceded that the case should have been left to the jury upon the question whether the engineer was negligent, there can be no doubt whatever but that the proximate cause of the plaintiff's injury was his own negligence in disregarding and departing from the established usage and uniform course of conduct designed to secure his safety. The evidence on this subject is clear and decisive, and not open, we think, to doubt or difference of opinion. His omission to give notice that he was going under the engine the second time was clearly the cause of the accident. How could he be said to have acted with ordinary care and prudence in omitting to give notice on his return from putting up the card on the freight car, when he did not look in the cab to see if the engineer was there, did not speak to him, and could not know whether he would open the blow-off cock or move the locomotive or not? It is no excuse that the engine had been blown off, or partly so, at the last station, or that he did not anticipate that it would be blown off so soon again. All this was a matter with which he had nothing to do, but was wholly within the province of the engineer. Without notice to him, he took it upon himself to determine what the engineer might or might not do, and he assumed the risk of the most unfortunate consequences that ensued, because he failed to give the necessary notice. *Abend v. T. H. & I. R. Co.* 111 Ill. 202, 208; *Darracutts v. C. & O. R. Co.* 31 Am. & Eng. R. Cas. 157, and cases cited; *La Croy v. N. Y., L. E. & W. R. Co.* 132 N. Y. 570; *Baltzer v. C., M. & N. R. Co.* 83 Wis. 472; *Francis v. K. C., St. J.*

*& C. B. R. Co.* 53 Am. & Eng. R. Cas. 410, and cases cited *supra*. It is therefore clear that the plaintiff was precluded by his negligent conduct from a recovery.

For these reasons, the circuit court erred in refusing to direct a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.