Argued June 30, affirmed July 21, 1914.

# HEISER *v.* SHASTA WATER CO.*

(143 Pac. 917.)

**Master and Servant—Injuries to Servant—Actions—Variance.**

1. Under Section 97, L. O. L., providing that no variance between pleading and proof shall be deemed material unless it has actually misled the adverse party to his prejudice, the variance being an allegation that a servant was engaged in filling siphon bottles, and was injured by the explosion of one of the bottles then being filled, and proof that the bottle which exploded had just been filled and placed upon a tray to be taken away was not material.

**Master and Servant—Injuries to Servant—Instructions—Unavoidable Accident.**

2. In an action for injuries to a servant, where the complaint alleged and the proof tended to show that the servant requested his employer to procure him a mask and gloves, which the employer failed to do, and that in working without them the servant was injured, and the instructions clearly excluded any recovery on account of injury, except from the failure to furnish a mask and gloves, and necessarily excluded any recovery on account of any accident not occasioned by such negligence, an instruction that if the injury was unavoidable accident "under the circumstances of this case," or could not have been prevented by reasonable care, the verdict should be for defendant was properly refused.

**Trial—Instructions—Assuming Facts.**

3. Where the injury sued for consisted partly in the wounding of a tendon of plaintiff's hand by broken glass, and there was evidence that after laying off for several days he returned to work, but could not work without pain, and that the tendon broke one night while he was asleep, causing additional pain and suffering, an instruction that no evidence had been offered to prove that the second injury resulted from or was traceable to the first, and that the jury could not therefore allow any damages for the second injury, was properly refused, because it assumed that there was no evidence that the latter injury was referable to the former injury.

**Damages—Aggravation of Injuries—Question for Jury.**

4. In an action for an injury to a servant, consisting in part in the wounding of a tendon of his hand by broken glass, evidence *held* to present a question for the jury whether the servant's resuming work aggravated the original injury to the extent of causing the breaking of the tendon.

**Damages—Master and Servant—Injury to Servant—Actions—Instruction—Measure of Damages.**

5. In an action for injury to the tendon of a servant's hand by broken glass, where the evidence presented a question for the jury

---

*As to the necessity for agreement between allegations and proof as to master's liability to injured servant, see note in 41 L. R. A. 149.

REPORTER,

whether the subsequent breaking of the tendon was referable to the original injury, an instruction that if the verdict should be for plaintiff, it should be for such sum as would compensate him for the injury, and the injury would be the accident itself and the direct and natural consequence of it, apart from any other intervening cause, fairly placed the matter before the jury both as to the right of recovery and the measure of damages.

[As to measure of damages for personal injuries, see note in Ann. Cas. 1913A, 1361.]

**Master and Servant—Injuries to Servant—Assumption of Risk—Statutory Provision.**

6. In an action under the Employer's Liability Act (Laws 1911, p. 16) for injury to a servant, assumption of risk by the servant is not a defense.

**Master and Servant—Injury to Servant—Action—Questions for Jury.**

7. In an action for injury to a servant, engaged in filling siphon bottles, evidence held to present a question for the jury whether the use of gloves and mask to protect the servant was practical.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2. Statement by MR. CHIEF JUSTICE MCBRIDE.

This is an action by Louis Heiser, by Nick Heiser, his guardian *ad litem* and natural guardian, against the Shasta Water Company, a corporation, for personal injuries, and is brought under Section 1 of the Initiative Act of 1910 (Laws 1911, c. 3), which provides, among other things:

"All owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Section 6 of the act provides:

"The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage."

The complaint alleges, in substance, that plaintiff, a boy 18 years of age, was in the employ of defendant, and engaged in filling siphon bottles with high-pressure carbonated water; that said occupation is dangerous and hazardous, owing to the liability of such bottles to explode as a result of the high pressure brought to bear on them by such filling; that it was practical, and also the duty of defendant, to furnish plaintiff with regulation gloves and mask in order to obviate all danger from the explosion of such bottles; that plaintiff, before the accident, requested defendant to furnish such gloves and mask, and defendant promised to do so, but, after repeated requests and promises to furnish them, failed to do so, and permitted plaintiff to work at such occupation without them; that on July 12, 1912, plaintiff, while so working, filling said bottles without the gloves and mask, was seriously injured by the explosion of one of the bottles then being filled, of which injury he complains in his complaint. There was also an allegation that defendant was negligent in not furnishing bottles of suitable strength to withstand the pressure necessarily put upon them in filling, but there was no evidence on this point, and it need not be further noticed. Defendant answered by a general denial of the material allegations of the complaint, and upon the trial the plaintiff had a verdict and judgment, from which defendant appeals.        Affirmed.

For appellant there was a brief over the names of *Mr. Walter Wolf, Mr. Ralph E. Moody* and *Mr. John F. Reilly,* with an oral argument by *Mr. Wolf.*

For respondent there was a brief over the names of *Mr. Charles F. Saunders* and *Messrs. Able & Burnett,* with an oral argument by *Mr. Saunders.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. It is contended that the evidence offered by plaintiff does not correspond to the allegation of damages in his complaint, and is insufficient to bring the injury shown within the purview of the statute. The allegation, in substance, is: First, that plaintiff was engaged in filling siphon bottles; and, second that he was injured by the explosion of one of the bottles then being filled. The evidence tended to show that plaintiff was engaged in filling at a machine used for that purpose, that as fast as the bottles were filled they were placed on a tray by the side of the machine, and that it was the duty of plaintiff when the tray had been filled to put the labels upon the bottles and take them to another place and put them away upon a shelf. In pursuance of this practice he had just filled the bottle in question and placed it upon the tray and was starting to fill another bottle, when the bottle last filled blew up, causing the injury. The variance alleged is merely technical, and could not have misled the defendants on the trial. Plaintiff's work upon the bottle was not complete. It was still in his immediate vicinity and under his control, and whether it exploded while in the process of being filled or a few seconds after is not material. Section 97, L. O. L., provides:

"No variance between the allegation in a pleading and the proof shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

It is very evident that defendant was not prejudiced by the variance, if indeed it should be called such. At the close of the case the court allowed the pleading to be corrected to conform to the evidence in the respects mentioned above.

2. The defendant also predicates error upon the court's refusal to give the following instruction:

"If you find from the evidence that the injury which plaintiff suffered was an unavoidable accident under the circumstances of this case, or that the accident could not have been prevented by the exercise of reasonable care upon the part of the defendant, then your verdict should be for defendant."

The particular vice of this instruction is the introduction of the words "under the circumstances of this case." The circumstances were that the plaintiff requested defendant to procure him a mask and gloves, which defendant failed to do, and that in working without them he was injured. Under these conditions the injury was unavoidable. It would have been unavoidable irrespective of whether or not defendant was negligent. The instruction was one tending to mislead the jury, and was properly refused. In addition it may be added that this request, so far as applicable, is covered by the general instructions given by the court, which completely and admirably lay down the law. Among other things the court instructed as follows:

"In a case of this kind, negligence is not presumed from the mere fact that an accident happened, or that a party may have been injured. On the contrary, the law presumes that both plaintiff and defendant exercised due care, and the party who attempts to establish negligence on the part of either must establish it by a preponderance of the evidence. The only negligence for which the defendant would be liable in this case is the negligence set forth in the complaint. So that in this case, if you should find that the defendant is guilty of negligence, which is not alleged in the complaint, it is not liable for such negligence so not alleged, even if you should find it was the proximate cause of the injury, and the reason is that the defendant re-

ceived its notice of the particular charges of negligence from the pleadings, and as those are the only charges set up, those are the only charges that it is called upon to refute; and the particular charge, as I have before indicated, is a charge of failing to provide the plaintiff with regulation mask and gloves. Negligence is the failure to do something that a person of reasonable care and prudence would have done, or the doing of something that a person of reasonable care and prudence would not have done under the circumstances. It is the want of due care in the particular situation. Due care and negligence are relative terms, and what in one situation might be due care might be negligence in another; and the measure of duty always is reasonable care and caution upon the part of an employer for the safety of his employees. And that care should be proportioned always to the dangers reasonably to be apprehended from the employment in which the servant is engaged. * * When you come to consider this case your first inquiry will be whether this was a dangerous employment, one involving danger to the servant engaged in it. * * Then your next inquiry will be whether the providing of regulation gloves and mask is a practical provision in the employment in which the plaintiff was engaged. Whether it is practical to use them, and whether the use of them will or will not impair the efficiency of the servant. And a further question, of course, for you to determine would be whether if he had been provided with these appliances that would have protected him against the injury which he received.''

These instructions clearly excluded any recovery on account of any injury except that arising from defendant's alleged negligent failure to furnish a mask and gloves, and necessarily excluded any recovery on account of any accident, unavoidable or otherwise, not occasioned by such negligence.

3-5. The injury that defendant received consisted, among other things, in the severing or wounding of

a tendon of his hand by a piece of broken glass. He
testified that after laying off for several days he re-
turned to work, but that he could not work without
pain, and that the tendon broke one night while he
was asleep, causing additional pain and suffering.
Whether the second lesion was the result of his return-
ing to work before he had completely recovered from
the original injury is problematical under the circum-
stances detailed and was left by the court to the jury.
In this connection defendant's counsel requested the
following instructions:

"Evidence has been offered tending to prove that
some five weeks after the accident plaintiff, while in
bed, suffered a second injury to his hand, but no evi-
dence has been offered to prove that his second injury
resulted from or was in any way traceable to the first.
You cannot therefore allow any damages on account
of such second injury occurring to plaintiff, but must
allow him only compensation for the first injury."

The refusal of the court to give the above is as-
signed as error. The instruction assumed as a fact
what was at least disputable, namely, that there was
no evidence tending to prove that the later lesion was
referable to the original injury, whereas it might rea-
sonably have been inferred from the circumstances
themselves, and in fact, nobody reading all the testi-
mony would reasonably conclude otherwise. Whether
the fact that plaintiff's resuming work when he did
aggravated the original injury to the extent of bring-
ing about the breaking of the tendon was a question
of fact for the jury. The testimony of Dr. Fenton,
one of defendant's witnesses, confirms the view we
have taken of this feature of the case. Being asked
to account for defendant's statement that pus had

gathered from time to time at the point of the injury, he answered:

"At the time of the injury, judging—if I may not state the cause of the injury, which was a piece of glass—glass is inclined to produce an inflammation, pus in formation. Usually it makes a jagged wound, and in healing, if the external wound was closed, there is a possibility of some pus formation beneath; according to his own statement it did form a pocket there. Then subsequently did not unite, evidently the tissues broke down, and the tendons separated and a second operation was done, cutting along the line of the tendons in order to gather it up and bring the two ends together. This was united probably with a kangaroo tendon or with some ligature of endurance, something that would hold the tendon in a position for 10 or 20 days, and from the statement given, I judge that this ligature as it absorbed suppurated slightly so that pus escaped the second time. However, it was not sufficient to prevent the union of the tendons. The tendon has united, but it has thickened quite considerably to what it was in the original state."

Upon this matter the court instructed the jury as follows:

"Gentlemen, the injury complained of in this case is an injury to the back of the hand, which is alleged to have cut one of the tendons of the hand, and in case you should find for the plaintiff in this case, you should take up, of course, the question of injury (and injury to the face, of course, also). That injury to the hand as charged here in the complaint was the injury received on the 5th of July, 1912. Now, I think there has been some evidence in the case that a later injury has been received somewhere about the wrist.

"Mr. Burnett: Earlier.

"Mr. Reilly: The second injury was the snapping of the tendon while in bed.

"The Court: Oh, yes. Well, now, gentlemen, upon that question, if you should find for the plaintiff, you should allow him such sum as will compensate him,

in your opinion, for the injury he has received, and the injury will be the accident itself, and the direct and natural consequences of it, apart from any other intervening cause, such as happened at the time, and such as naturally and directly result from the cutting of the hand, whatever you might find that to be. I say, in case you find for the plaintiff, you will award him such sum as in your judgment will compensate him for the injury he has received, and for such disability as you find he has sustained by reason of such injury.''

This put the matter fairly before the jury both as to plaintiff's right of recovery and the measure of his damages.

6. Defendant's counsel also assigns as error the refusal of the court to give the following instruction:

''The servant assumes the dangers of the employment to which he voluntarily and intelligently consents, and while ordinarily he is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions. If, therefore, you find from the evidence that the work in which plaintiff was engaged was more dangerous without the use of gloves, and that plaintiff knew that fact and continued working without gloves in spite of such knowledge, then plaintiff must be held to have assumed the risk attached to such work, and your verdict should be for the defendant.''

This instruction would have been good in a common-law action for negligent injury, but it has no application to actions brought under the Employer's Liability Act when assumption of risk by the servant is not a defense: *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524, 22 L. R. A. (N. S.) 634); *Love* v. *Chambers Lumber Co.,*

64 Or. 129 (129 Pac. 492); *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351).

7. It is also claimed that the testimony shows that the use of gloves and mask is not practicable in filling siphon bottles, and that, therefore, the plaintiff has not brought himself within the terms of the Employer's Liability Act. The testimony on this point is conflicting. The plaintiff, who had two years' experience in bottling, thought the use of them practical, and requested Mr. Robinson, defendant's manager, to furnish them. At the time the request was made Mr. Robinson evidently thought their use practical, because he promised to procure them. Mr. Crane, plaintiff's witness, thinks them practical, though he admits that they may render the process of bottling somewhat slower, and says that many, and in fact a majority of, bottlers refuse to use them for that reason. Witnesses for defendant go further than this, and say in effect that their use is impracticable. So there was evidence to go to the jury in support of plaintiff's theory, and as frequently announced, we will not disturb the verdict of a jury where there is any substantial evidence to support it. In cases of contradictory testimony the jury and not the court is the judge of its value and effect.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.