Argued April 12, reversed and remanded April 24, 1917.

POULLOS v. GROVE.*

(164 Pac. 562.)

Master and Servant—Negligence—Injuries to Servant—Employers' Liability Act—Contributory Negligence.

1. In a servant's action for injuries, a complaint, alleging that defendant employed plaintiff as a farm laborer and directed him to go to the second story of a barn for the purpose of assisting in throwing down hay, negligently failing to warn him that there was a hole in the floor of the second story or to guard such hole, and that owing to darkness and insufficiency of lantern light the plaintiff fell through such hole and was injured, stated a cause of action within the purview of the Employers' Liability Act (Laws 1911, p. 16); and hence, under the direct provisions of Section 6 of the act, contributory negligence of plaintiff was not a defense, but could only be taken into account by the jury in fixing the amount of damages.

---

*On the question of abrogation of defense of contributory negligence by Federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 61; 48 L. R. A. (N. S.) 987; L. R. A. 1915C, 65.          REPORTER.

Master and Servant—Injuries to Servant—Employers' Liability Act—
Question for Jury.

2. The question whether plaintiff's employment was one of risk or
danger, and hence under the Employers' Liability Act, which involves
the consideration of the conditions under which the work was to be
performed as well as the class of employment, *held* for the jury under
proper instructions.

Master and Servant—Injury to Servant—Employers' Liability Act—
Sufficiency of Evidence.

3. Evidence *held* sufficient to go to the jury on the hypothesis that
plaintiff was in the loft pursuant to the direction of the defendant,
that he was ignorant of the hole, and that he could not see it owing
to the darkness and insufficiency of the lantern light.

> [As to what statutes are impliedly repealed by State Employ-
> ers' Liability Act, see note in Ann. Cas. 1916E, 773.]

From Linn: PERCY R. KELLY, Judge.

This is an action by William Poullos against R. M.
Grove. Judgment for defendant and plaintiff appeals.
Reversed and remanded for further proceedings.

Department 1.    Statement by MR. JUSTICE BURNETT.

In substance it appears from the complaint that at
the dates mentioned therein the defendant owned and
operated a farm in Linn County, Oregon, upon which
was situated a two-story barn. About fifteen feet
above the first floor was the second story, where the
hay used for feeding the stock was stored and it was
necessary for those engaged in that work to go there
and pitch it down to the racks and mangers below.
About March 18, 1915, the defendant employed the
plaintiff to do general farm work for him, among other
things to assist in feeding the horses, milking the cows,
and the like. The plaintiff's initiatory pleading pro-
ceeds then as follows:

"That on or about March 31, 1915, and while plain-
tiff was employed by defendant and pursuant to such
employment and about eight o'clock in the evening of
said day, defendant directed plaintiff to ascend to the
said second story in said barn for the purpose of assist-
ing in throwing hay down from said loft in said barn
to the racks and mangers of the horses for the purpose

of feeding said horses, and to go upon the hay in said second story at and near that certain hole and pitfall hereinafter mentioned; that prior to said time plaintiff had not been in the loft and second story of said barn and was not familiar with the conditions that obtained therein and did not know of the existence of that certain hole and pitfall hereinafter mentioned; that at said time the entire second story and hay loft in said barn was enveloped in darkness and plaintiff was unable to see the conditions existing in said second story and in said barn and did not see and could not see said hole and pitfall and that the same was concealed and invisible; that at said time and at all times herein alleged it became and was the duty of defendant to provide plaintiff a safe place in which to perform said service and work, and to warn plaintiff of the dangers incident to the performance thereof, and to warn plaintiff of the perils and dangers existing on the premises and on said second story of said barn and of the existence of the hole and pitfall hereinafter mentioned; that in violation of his said duty defendant negligently and carelessly caused and suffered a certain hole and pitfall some six feet square in dimensions to extend through the hay and second story of said building at and near the place where plaintiff and others feeding said stock were required to work and remain while feeding said stock, and thereby rendered said place dangerous to the life and person of plaintiff and others working therewith, and negligently and carelessly failed and omitted to place any guard or guards around said hole and pitfall and negligently and carelessly failed and omitted to warn plaintiff of the presence and existence of said pitfall and negligently and carelessly requested and directed plaintiff to go upon said hay and second story and over and across same where said pitfall existed; that at said time plaintiff had no knowledge of said pitfall or the dangers and perils incident to going upon said hay; that at all times herein alleged it was and is practicable to provide good and sufficient guards in the way of walls, boards and lights that would have warned plaintiff of the existence of said hole and pitfall and pre-

vented plaintiff from falling therein; that in compliance with the commands and requests of defendant and in the course of his employment plaintiff ascended the second story as directed by defendant for the purpose of feeding said stock; that while in the performance of said duty and without fault upon the part of plaintiff and solely by reason of the negligence of defendant as hereinabove alleged, plaintiff fell with great force and violence through said hole and pitfall down from the said second story in said building to the floor on the first story of said building some fifteen feet distant below, thereby breaking the bone in plaintiff's left thigh and hip and lacerating and bruising the muscles, nerves and skin of plaintiff's left arm, left side and left leg, and causing plaintiff's left leg and hip to permanently remain stiff and weak and shortened.''

The remainder of the complaint relates to the age and condition of the plaintiff, his earning capacity, and his damage both general and special, concluding with a demand for judgment.

The answer denies all the allegations of the complaint except the ownership of the farm and barn thereon, and the fact, as the answer contends, that the plaintiff injured himself. The affirmative defense is to the effect that the plaintiff went into the barn loft without any direction of the defendant and without any reason for his being there; that whatever injury he received was because of his own carelessness and negligence in not observing the hole through which he fell.

This in turn was traversed by the reply. The assignments of error relate to the giving of certain instructions by the court. From a judgment in favor of the defendant the plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Weatherford & Weatherford,* with an oral argument by *Mr. Mark V. Weatherford.*

For respondent there was a brief over the name of *Messrs. Hill & Marks,* with an oral argument by *Mr. Gale S. Hill.*

Mr. Justice Burnett delivered the opinion of the court.

There is testimony on behalf of the plaintiff to the effect that he applied to the defendant for employment; that the latter told him there was not much to do, but that if he needed work he would employ him, paying him whatever was right and that after a while when there was more to do he would recompense him with money; and further, that for several days he worked about the farm cutting and burning brush, helping to pick up lambs, and milking. Relating to the mishap in question, he testifies that in the evening when supper was over and after dark the defendant's son remarked that it was time to go and feed the horses, whereupon the defendant, to quote the witness, said:

"Well, he says to me, 'You had better go with him and help him to do that, too; he will show you where the hay is, and you will know yourself next time,' and I told him, 'All right.'

"Q. What did you do?

"A. His son stepped out of doors and got the lantern, and lighted the lantern, and started for the barn, and I was following him.

"Q. Had you ever been in the second story of that barn before?

"A. No. * *

"Q. And after you got to the barn, where did you go?

"A. We started to go upstairs, up to the upper deck.

"Q. And how were you traveling?

"A. I was keeping following him, always right behind him.

"Q. And what was the condition, so far as you could see the floor, upstairs?

"A. Couldn't see anything else; just keeping following his tracks. It was too dark, and I couldn't see nothing else, and following him and following the signs of the light against the other wall of the barn.

"Q. And what happened?

"A. After I walked about probably four or five feet, something like that, then I fell through, fell all at once; I don't know how I fell, but I hit the second floor; I hit the floor, and I was laying there, I don't know how long I was laying there; and when I come up to myself I seen Mr. Grove's son standing beside me with the lantern on his hand."

The plaintiff's further testimony was to the effect that his hip was broken and relates to his subsequent sufferings. It is undisputed that in the second floor over the driveway leading through the barn was a hole six by eleven feet in the clear. The stairway leading up to the hay loft ended twenty-six inches from one corner of the large hole. The plaintiff testified in substance that on the occasion mentioned the defendant's son preceded him and going up to the loft, passed near the big hole to the west end thereof, turned across and hung his lantern on a post near the southwest corner of the hole; and that the plaintiff following him during this time fell through the hole to the floor below.

1. The court in various forms instructed the jury that if the plaintiff by his own negligence contributed to the injury he could not recover at all. For instance, when the jury returned for further instructions, the court said to them:

"If both parties were negligent and the negligence of each contributed directly to the injury, the plaintiff cannot recover. That is the doctrine of contributory negligence."

We have in this case a pleading sufficient to disclose an employment of the plaintiff by the defendant. It

states enough to show that, in the manner in which it was to be accomplished, the work at which he was set involved a risk and danger to the employee performing the same.

It is said in what is known as the Employers' Liability Act:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

We have decided in effect on numerous occasions that this language enlarges rather than restricts the particular words used in the first part of the section, from which the excerpt is taken. For instance, in *Yovovich* v. *Falls City Lumber Co.*, 76 Or. 585 (149 Pac. 941), we applied it to a case where the plaintiff's decedent was killed by the release of a tree which had been bent over by another fallen tree from which he had cut a saw log. The statute was held applicable in *Marks* v. *Columbia County Lumber Co.*, 77 Or. 22 (149 Pac. 1041, Ann. Cas. 1917A, 306), where the plaintiff was injured by the action of a fractious horse which he was using to haul lumber for the defendant. In *Dorn* v. *Clarke-Woodward Drug Co.*, 65 Or. 516 (133 Pac. 351), the work involved was the installation of a transom in the wall of an office requiring the use of a ladder which slipped and allowed the plaintiff to fall upon the floor whereby he received the injuries of which he complained. The enactment was applied there. It governed the case of *Schaller* v. *Pacific Brick*

*Co.,* 70 Or. 557 (139 Pac. 913), where the plaintiff was injured in working about a pressed brick machine. It ruled in *Heiser* v. *Shasta Water Co.,* 71 Or. 566 (143 Pac. 917), in which the injury was the result of an explosion of a syphon bottle filled with carbonated water. We decided for the plaintiff under the act in *Mackay* v. *Commission of Port of Toledo,* 77 Or. 611 (152 Pac. 250), where, owing to a defect in a ladder, it slipped upon the deck of a dredger on which the plaintiff was at work for the defendant whereby he was thrown to the floor and injured. A fair construction of the complaint in this instance makes out a cause of action within the purview of the legislation mentioned.

The instructions of the court excluded the plaintiff from recovery if it should appear that his own negligence contributed in any degree to the injury which he claims he suffered. Section 6 of the statute, however, says:

"The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage."

In other words, the enactment does away with the old rule of requiring the employee to carry the whole risk of the employment and to fail of recovery if his own neglect contributed in any way to the injury of which he complains. The new legislation on the contrary allows contributory negligence to be used only to mitigate the actual damages and measure them out between the parties in proportion as the fault of each of them contributed to the injury happening to the plaintiff.

2. As a matter of law we cannot classify the infinite variety of employments and say that some of them are works involving risk or danger and that others are not.

As stated by Mr. Justice BENSON in *Mackay* v. *Commission of Port of Toledo,* 77 Or. 611 (152 Pac. 250):

"The question as to whether or not the work involved a risk or danger is one of fact, to be determined by the jury, rather than a question of law."

Each case must depend greatly on the attendant circumstances. The conditions under which the work was to be performed must be considered as well as the class of employment. All such things affect the question of whether the task involves risk or danger, and this must be left to the jury under proper instructions.

3. To entirely exclude the plaintiff from recovery if his heedlessness in any way contributed to the injury would be to deprive him of the benefit of the Employers' Liability Act and utterly to ignore the theory of the case as framed by his complaint. We have a case of employment where the defendant was the owner of the barn in which the accident occurred. Confessedly, the opening in the floor was without any guard or obstacle to prevent anyone from falling through it. There was enough testimony to go to the jury on the hypothesis that the plaintiff was in the loft in pursuance of the direction of the defendant; that he was ignorant of the existence of the hole, and that he could not see it owing to the darkness and insufficiency of the lantern light. He was entitled to have his case submitted to the jury as he stated it; but by visiting upon him the whole consequence of his carelessness, if any, the court deprived the jury of the right to consider the plaintiff's grievance as pleaded. The result is that the judgment must be reversed and the cause remanded for further proceedings.        REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE HARRIS and MR. JUSTICE MCCAMANT concur.