Argued April 2, affirmed June 12, rehearing denied July 31, 1928.

# ERNEST JODOIN *v.* LUCKENBACH STEAMSHIP COMPANY, INC.

### (268 Pac. 51.)

**Master and Servant—Place of Work to be Considered on Question of Work Involving Risk or Danger Within Employers' Liability Act (Or. L., § 6785).**

1. As an important factor influencing decision as to work in given case involving risk or danger within Employers' Liability Act (Or. L., § 6785), proper consideration must be given to place in which work is done.

**Master and Servant—Whether Work of Propelling by Hand Truck on Dock Involved Risk or Danger Within Employers' Liability Act Held, Under Evidence, for Jury (Or. L., § 6785).**

2. Whether plaintiff's work of aiding in propelling hand truck on dock, in course of which he was injured by collision with motor-truck, involved risk or danger within Employers' Liability Act (Or. L., § 6785) *held,* under facts brought out by evidence, question for jury.

**Master and Servant — Negligence of Fellow-servant not Defense, Where Employers' Liability Act Applies (Or. L., § 6620).**

3. Under Section 6620, Or. L., in a case in which the Employers' Liability Act (Or. L., §§ 6785–6791) applies, defense of negligence of fellow-servant is not available.

**Master and Servant — Motor-car Held "Machinery" Within Employers' Liability Act Relative to Negligence of Fellow-servant (Or. L., § 6789).**

4. A motor-car used in moving goods on dock is "machinery," within Section 6789, Or. L., abrogating the defense of negligence of

---

3. Abrogation of fellow-servant rule by Workmen's Compensation Act, see notes in L. R. A. 1917D, 57. See, also, 28 R. C. L. 750.

4. What instrumentalities are covered by the term "machinery," see note in 57 L. R. A. 821. Meaning of term "machinery," with

fellow-servant in action against employer for injury to employee, where injury was caused or contributed to by neglect of any person in control of machinery.

**Master and Servant—Rule Established by Custom Need not be Posted or Promulgated by Employer.**

5. It is unnecessary for employer to post, promulgate or otherwise announce a rule or regulation to be effective, if it is understood and observed by the persons to whom it applies so as to have become a custom.

**Trial—Enough That Instructions Covered Case in Entirety.**

6. It is enough that court's instructions covered the case in its entirety, so that requested instructions, merely repeating some given, may be refused.

**Master and Servant—Finding That Rule, Requiring Motor Vehicle Drivers to Look Out for Hand Truck Operators on Dock Should have Been Promulgated Held Warranted, in View of Danger.**

7. In view of danger incident to the conduct of moving goods on dock in discharging and loading cargoes in which motor vehicles and hand trucks were used, *held*, in employee's action for injury, that jury could have found that rule, requiring drivers of motor vehicles to look out for and observe and warn those operating hand trucks, should have been promulgated for protection of the workmen.

---

Master and Servant, 39 C. J., p. 473, n. 89, p. 641, n. 58, p. 1107, n. 2, p. 1126, n. 5, 6, p. 1220, n. 67, p. 1223, n. 2, p. 1259, n. 2.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is an action for damages. The defendant is the owner of the Luckenbach dock, situate on the east side of the Willamette River and adjacent to the navigable waters thereof. At the time of his injury plaintiff, an employee of defendant, was engaged in working on the above-named dock.

The plaintiff alleges, in substance, that the defendant corporation stores freight and cargo in its

---

respect to duty of employer, see note in Ann. Cas. 1918E, 204. What is embraced by "works," "ways," "equipment," "machinery," etc., in Employers' Liability Act, see note in 23 A. L. R. 716.

5. Habitual practice of employees, how far a legal substitute for a rule, see note in 43 L. R. A. 316. See, also, 18 R. C. L. 574.

dock for shipment; that on June 22, 1925, an ocean-going vessel was berthed at defendant's dock, discharging and loading cargo on to and from the dock; that, in connection with its work of loading and discharging such cargo, the defendant employed four cargo jitneys and trucks which were operated by drivers and traveled in and about and over the dock, and, in addition thereto, used four-wheel trucks which were moved around the dock by longshoremen, some of whom pulled on the tongue while others pushed on the back of the trucks; that, because of this movement of the jitneys and trucks in and about the dock, it was necessary for the safety of persons working in and about the premises for defendant to establish a system of communication by means of signals, and rules and regulations governing the number of the trucks, but that the defendant negligently and carelessly failed to establish any such system of communication, and negligently and carelessly failed to adopt any rules and regulations governing the number of the trucks and the conduct of the work, and, as a direct and proximate result thereof, while plaintiff was engaged in pulling on the tongue of a four-wheel truck in the driveway of the dock, one of defendant's jitney trucks then being operated by an employee of defendant negligently stopped in the driveway without any notice or warning, thereby causing plaintiff, who was traveling toward the truck, to run into it and injure his right knee, and causing him to lose time from his work and labor, to suffer great physical pain and mental anguish, and permanent injury to his knee, all to his damage in the sum of $2,999. Plaintiff further alleges:

"That it would have been practicable for defendant to have adopted a rule whereby no employee operating one of said jitney trucks would stop said truck without giving a signal, or move in and about said dock without a definite system of rules, all of which defendant negligently failed to install and adopt, and as a direct and proximate result thereof, plaintiff sustained the injuries hereinbefore set forth."

The defendant, answering, admitted that in June, 1925, an ocean-going vessel was berthed at defendant's dock discharging and loading cargo on to and from the dock, and, in connection therewith, was using cargo jitneys and trucks operated by drivers. For a first further and separate answer and defense it averred that, on June 22, 1925, while plaintiff and another employee of defendant were pulling an empty four-wheel truck along a certain gangway of the dock and were approaching the intersection with another gangway, a motor tractor or jitney with an empty four-wheel truck in tow was approaching the gangway on a course that would intersect that of the plaintiff; that motor tractors in all cases have the right of way over trucks propelled by man power, which fact was well known to the plaintiff, but that plaintiff, in violation of this rule, and with a reckless disregard for his own safety and that of other employees of the defendant, attempted to beat the motor tractor across the intersection; that the motor tractor crossed in front of the plaintiff and came to a stop at a place which the plaintiff well knew to be the regular appointed stopping place for the motor tractor to unhook empty trucks, but that plaintiff was traveling so rapidly with his four-wheel truck that it was impossible for him to stop, and, as a result, he collided with the four-wheel truck in tow

of the motor tractor, sustaining injuries to his knee. For a second further and separate answer and defense, the defendant averred that if the plaintiff's injury was caused by defendant's negligence, which it expressly denied, such negligence was that of a fellow-servant of the plaintiff. For a third, it alleged contributory negligence; and, for a fourth, that plaintiff assumed the risk of the motor tractor's stopping in that particular place without warning.

The plaintiff, replying, denied each and every allegation contained in the answer, except as averred in his complaint.

On trial, the jury returned a verdict for plaintiff in the amount of $1,500. From the judgment rendered thereon the defendant appeals to this court, submitting for decision six questions, which will be taken up in their order.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Wood, Montague & Matthiessen* and *Mr. Gunther F. Krause,* with an oral argument by *Mr. Erskine Wood.*

For respondent there was a brief over the name of *Messrs. Lord & Moulton,* with an oral argument by *Mr. Arthur I. Moulton.*

BROWN, J.—1, 2. Does the Employers' Liability Act apply to this case? This is the first question to be determined. So far as material here, the act provides:

"And generally, all owners, contractors or subcontractors, and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use

for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices." Laws 1911, Chap. 3, § 1, codified as Or. L., § 6785.

As an important factor influencing the decision as to whether the work in a given case does in truth involve a risk or danger, proper consideration must be given to the place in which the work is done: *Vanderflute* v. *P. R. L. & P. Co.*, 103 Or. 398 (205 Pac. 551).

The plaintiff testified that, at the time he sustained the injury, he was thirty-eight years old; that he had been employed in longshoring for the company for about a year and eleven months, and had earned on the average about $150 a month; that the place herein referred to as a dock was an inclosed building about 400 by 800 feet, with a roof over it. He thus described the trucks used by the company, one of which he, with his partner, was pulling across the dock when he was injured:

"Well, they are a truck about half a foot high when one of these boards is laid on top of it to put the cargo on. It is lined with steel or iron. It has four heavy pieces of iron on each corner so men can lift them up, handles, and also to hook on with. The trucks have four iron wheels and they weigh about 400 pounds with a slingboard on it."

He testified that the trucks were about three feet by six feet in size, and the record shows that they were not equipped with brakes. As to the conduct of the work he testified:

"Q. Will you give the jury an idea of how busily those jitneys and trucks were moving on that dock the day you were hurt * * ? A. Well, the way that

was, they started to load the ship, and they were unloading it at the same time, and they were in a hurry. That is why they done that, and there was so many men around there; there was about 75 or 80 men on that dock working at one time. They were just going from one end to the other as fast as they could.

"Q. How fast were you hauling the empty trucks by hand? Give the jury an idea of the rapidity with which it was proceeding. A. Well, I was walking faster than I really should. I was told to hurry up.

"Q. Who told you to hurry up? A. The straw boss.

"Q. What did he say with respect to that? A. He told me to 'step on it,' they had 'to get this ship loaded.'

"Q. How fast were the jitneys usually operated? A. Well, from 12 to 16 or 18 miles an hour. * *

"Q. What were you doing right at the time you were hurt? * * A. I was hauling canned goods from about the center of the dock down to the other end. * *

"Q. During the time you were working on the dock, had there ever been any rule or regulation promulgated or enforced or communicated to you in regard to how the traffic on the dock was handled between these various trucks and jitneys? A. No, sir.

"Q. Was there any statement or rule prevalent among the men as to who had the right of way? A. I never heard of it, sir.

"Q. Or any rule as to how traffic should move? A. No, sir.

"Q. Was there anything of the kind posted up, any rule posted up? A. No sir, none at all."

Plaintiff testified that at the time of his injury he saw a jitney approaching the passage toward which he was headed, but that he had seen jitneys come through there before, and that they had always cleared the passage before they stopped.

Under the facts brought out by the foregoing testimony, the question as to whether the plaintiff's work involved a risk or danger so as to bring him within the Employers' Liability Act was for the jury: See *Mackay* v. *Commission of Port of Toledo,* 77 Or. 611 (152 Pac. 250); *Poullos* v. *Grove,* 84 Or. 106, 164 Pac. 562; *Rorvik* v. *North Pac. Lbr. Co.,* 99 Or. 58, 190 Pac. 331 (195 Pac. 163); *Vanderflute* v. *P. R. L. & P. Co., supra; McCauley* v. *Steamship Willamette,* 109 Or. 131 (215 Pac. 892). The jury answered in the affirmative.

It has been held by this court in a number of instances that the language herein quoted from the act enlarges the meaning of the particular words used in the first part of that section. See *Poullos* v. *Grove, supra,* where Mr. Justice BURNETT collected the following cases in support of the reach of the protection of the Employers' Liability Act: *Dorn* v. *Clark-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351); *Schaller* v. *Pacific Brick Co.,* 70 Or. 557 (139 Pac. 913); *Heiser* v. *Shasta Water Co.,* 71 Or. 566 (143 Pac. 917); *Yovovich* v. *Falls City Lbr. Co.,* 76 Or. 585 (149 Pac. 941); *Marks* v. *Columbia County Lbr. Co.,* 77 Or. 22 (149 Pac. 1041, Ann. Cas. 1917A, 306); *Mackay* v. *Commission of Port of Toledo, supra.*

The trial court did not err in submitting to the jury the question of the defendant's liability under the provisions of the Employers' Liability Act.

Second. If the Employers' Liability Act applies, was there a violation? In response to competent evidence, the jury answered this question in the affirmative.

3, 4. Third. If the Employers' Liability Act applies, was the defense of negligence of a fellow-servant available to defendant? Under the provisions of

Section 6620, Or. L., we fail to see how the negligence of a fellow-servant can be invoked as a defense in this case. Furthermore, the motor-car that was being operated by plaintiff's fellow-servant was machinery under the control of that fellow-servant. See Or. L., § 6789. That a motor-car is a machine will not be disputed. And it has been held that an automobile may be a dangerous or deadly weapon: *People* v. *Anderson,* 310 Ill. 389 (141 N. E. 727).

5. We next reach the question as to whether the common observance of a rule or custom by workmen in their work relieves the employer of the duty of promulgating or printing or posting such rule. The following authorities support the proposition that it is unnecessary to post, promulgate or otherwise announce a rule or regulation to be effective, if it is understood and observed by the persons to whom it applies so as to have become a custom: *Luebke* v. *Chicago, M. & St. Paul Ry. Co.,* 63 Wis. 91 (23 N. W. 136); *Crane* v. *Chicago, M. & St. Paul Ry. Co.,* 93 Wis. 487 (67 N. W. 1132); *Rutledge* v. *Missouri Pac. Ry. Co.,* 123 Mo. 121 (24 S. W. 1053, 1055, 1056); *Barto* v. *Detroit Iron & Steel Co.,* 164 Mich. 135 (129 N. W. 15).

6. Did the trial court err in giving certain instructions and in refusing to give other requested instructions? It seems to the writer that the court by its instructions covered the case in its entirety, and that counsel's requested instructions but repeated some of the instructions given. To illustrate: When the court had fully instructed the jury, counsel for defendant said:

"I have these suggestions to your Honor you may adopt; I am not now excepting to the instructions. Yet I want to make these additional suggestions to

your Honor. You may adopt them or not. I think the jury should be told, in view of the allegation in the complaint, if no system of communication or signals was adopted that even the Employers' Liability Act only requires them where necessary for safety.

"The Court: I thought I made that entirely clear to the jury. I see them nod in the affirmative. Was that entirely clear to you, that rules do not have to be announced, prepared and announced, unless they are necessary for the safe conduct of the business without destroying its efficiency?"

At counsel's request, the court then repeated, in language following, its instructions relating to the negligence charged in the complaint.

"Do the jury understand that? It must, of course, be the negligence charged in the complaint. I thought I made that clear in the statement of the burden of proof. That is the law. It is not some other negligence that is not charged in the complaint."

7. The final suggestion of counsel to the court related to the alleged negligence of defendant in failing to provide rules and regulations for the conduct of the work; and the court told the jury that such failure would not be a ground for finding against the defendant unless the absence of rules caused or contributed to the injury. The only rule posted in the dock was "Safety First." Another rule perhaps established by custom was to the effect that motor vehicles had the right of way over the hand-drawn trucks. There seems to have been no rule requiring the drivers of the motor vehicles to look out for and observe and warn those who were operating the hand trucks; and we are of opinion that, in view of the danger incident to the conduct of the work in question as disclosed by the record, the jury could have found that some such rule should have been promulgated for the protection of the workmen

Did the trial court err in refusing to interfere with the argument of counsel for plaintiff? In presenting this case to the jury, counsel for plaintiff went to the verge of permissible argument; but we cannot say, as a matter of law, that this cause should be reversed by reason thereof. There is some testimony of record relating to the speed of the motor vehicle with which plaintiff collided and the movement of the hand truck which plaintiff was operating, upon which counsel based his argument.

Upon the whole, this cause appears to have been fairly tried, and there is no substantial ground for sending it back for retrial. Hence we direct its affirmance.        AFFIRMED.   REHEARING DENIED.

RAND, C. J., and BEAN and BELT, JJ., concur.